(No. 64424.—

JEFFREY DRALLE, a Minor, *et al.*, Appellees, v. BERNARD RUDER *et al.* (Merrell-Dow Pharmaceuticals, Inc., *et al.*, Appellants).

*Opinion filed June 20, 1988.*

Rooks, Pitts & Poust, of Chicago (Douglas P. Roller, Marc D. Ginsberg and Clifford E. Berman, of counsel), and Dinsmore & Shohl, of Cincinnati, Ohio (Frank C. Woodside III and Allen P. Grunes, of counsel), for appellant Merrell-Dow Pharmaceuticals, Inc.

Louis Hilfman, Ltd., of Chicago (Louis Hilfman and Robert L. Fogel, of counsel), and Stinespring, Lambert, Schroeder & Associates, of Flossmoor (Jerry L. Lambert, of counsel), for appellees.

Cassiday, Schade & Gloor, of Chicago (Rudolf G. Schade, Jr., Michael J. Gallagher and Judith A. Schieber, of counsel), for *amicus curiae* Illinois Association of Trial Defense Counsel.

Kevin J. Conway and Robert N. Wadington, of Robert J. Cooney & Associates, and Francis W. Golden, of George M. Elsener & Associates, all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs, Jeffrey Dralle, by his mother and next friend, Karen Dralle, and his parents, Karen and Gregory Dralle, individually, brought an action in the circuit court of Cook County to recover damages resulting

from injuries allegedly sustained by Jeffrey before and at the time of his birth. The instant appeal concerns that part of the complaint in which Mr. and Mrs. Dralle seek compensation for loss of their son's companionship and society from defendants Merrell-Dow Pharmaceuticals, Inc., Merrell-National Laboratories, Inc., and Richardson-Merrell, Inc. (Merrell-Dow or the Merrell-Dow defendants), manufacturers and distributors of a prescription drug allegedly used by Mrs. Dralle while she was pregnant with Jeffrey. The trial judge dismissed the claim for failure to state a cause of action. The appellate court reversed the dismissal order, holding that this State recognizes a common law cause of action by a parent for loss of companionship and society resulting from nonfatal injuries to a child. (148 Ill. App. 3d 961.) We allowed Merrell-Dow's petition for leave to appeal. See 107 Ill. 2d R. 315(a).

Mrs. Dralle was admitted to Riverside Hospital in Kankakee on October 16, 1977, and she gave birth to Jeffrey the following day. In a four-count complaint filed May 31, 1985, the plaintiffs asserted that the child was born with a number of maladies, and damages were sought under common law theories of negligence and products liability. Counts I and II of the complaint, alleging negligence, were brought against Mrs. Dralle's obstetricians, Dr. Bernard Ruder and Dr. James Goldenstein, their employer, Westwood Obstetrics and Gynecology, Ltd., and Riverside Hospital. In those counts the plaintiffs alleged that during the delivery the child suffered anoxia, or lack of oxygen, and was in fetal distress. In count I of the complaint Jeffrey sought recovery in his own behalf for those injuries, and in count II his parents sought recovery for loss of the child's companionship and society. Counts III and IV of the complaint were brought on a products liability theory against the Merrell-Dow defendants. In those counts the plaintiffs alleged that

Mrs. Dralle's use during pregnancy of the prescription drug Bendectin, a product manufactured and distributed by the Merrell-Dow defendants, had caused Jeffrey to be born with various birth defects. In count III Jeffrey sought recovery in his own behalf for his personal injuries, and in count IV, at issue here, Mr. and Mrs. Dralle sought recovery for loss of companionship and society resulting from the injuries to the child.

Merrell-Dow moved for dismissal of count IV of the complaint, contending that this State does not recognize a cause of action by a parent for loss of society arising from nonfatal injury to a child. The trial judge granted the motion and dismissed that part of the complaint. Mr. and Mrs. Dralle took an immediate appeal (see 107 Ill. 2d R. 304(a)), and the appellate court reversed the dismissal order. The court believed that denial of the parents' cause of action would be inconsistent with this court's decision in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, and with the appellate court's decision in *Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859. *Bullard* held that a parent may recover compensation for loss of a minor child's society in a wrongful death action; *Dymek* approved a claim for loss of society brought by a divorced father against his former spouse and a psychiatrist for allegedly "brainwashing" the couple's child in an attempt to destroy the filial relationship. In this case, the appellate court acknowledged that the parents' loss was intangible and would be difficult to determine, but the court believed that "[a]llowing the parents to maintain an action for the loss of society of a minor child in *Bullard* and *Dymek* and denying plaintiffs' cause of action in the instant case would be anomalous." (148 Ill. App. 3d at 963.) The court also construed the trend of case authority on this issue from other jurisdictions as favoring recognition of the parents' cause of action.

The appellate court has previously denied recovery by a parent seeking damages for loss of society and companionship resulting from nonfatal injuries to a child. (*Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 408-09, *aff'd in part and rev'd in part on other grounds* (1983), 98 Ill. 2d 158.) In an earlier case, *Stephens v. Weigel* (1948), 336 Ill. App. 36, 42, the appellate court had affirmed a judgment awarding to a plaintiff whose wife and daughter were injured in an automobile accident "consequential damages arising from his payment of medical and hospital expenses, and for the loss of the services and society of his wife and daughter"; recovery of damages for loss of society was not at issue there, and it is not clear from the opinion whether the award was limited to the wife's injuries, or whether it also extended to the daughter's. And our appellate court has consistently refused to recognize the converse claim—actions brought by children for loss of society and companionship resulting from nonfatal injuries to their parents. (*Huter v. Ekman* (1985), 137 Ill. App. 3d 733; *Block v. Pielet Brothers Scrap & Metal, Inc.* (1983), 119 Ill. App. 3d 983; *Mueller v. Hellrung Construction Co.* (1982), 107 Ill. App. 3d 337; *Koskela v. Martin* (1980), 91 Ill. App. 3d 568.) In support of count IV of the complaint, Mr. and Mrs. Dralle contend here that recognition of a cause of action by a parent for loss of society arising from nonfatal injuries to a minor child is a logical extension of this court's decision in *Bullard.* The Dralles note that a number of jurisdictions have allowed recovery in those circumstances (see, *e.g., Howard Frank, M.D., P.C. v. Superior Court* (1986), 150 Ariz. 228, 722 P.2d 955; *Reben v. Ely* (Ariz. App. 1985), 146 Ariz. 309, 705 P.2d 1360; *Shockley v. Prier* (1975), 66 Wis. 2d 394, 225 N.W.2d 495), and they maintain that recognition of the cause of action would not be contrary to public policy.

In *Bullard* this court held that a parent may recover damages for loss of a minor child's society in a wrongful death suit. *Bullard* was an action brought by the estate and the parents of a minor child killed in an automobile accident; recovery was sought under the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, pars. 1 through 2.2), the Survival Act (Ill. Rev. Stat. 1979, ch. 110, par. 27—6), and the family expense statute (Ill. Rev. Stat. 1979, ch. 40, par. 1015). With respect to the wrongful death claim, the jurors in that case were instructed to consider "the parents' loss of society with the decedent" in determining the pecuniary injury sustained by the parents, and this court held that the parents' loss of their minor child's society was compensable in a wrongful death action.

In *Bullard* the court noted that a majority of the States with wrongful death statutes limiting damages to pecuniary injuries, as the Illinois statute does, permitted recovery for loss of filial consortium. The decisional law in this State similarly favored a broad reading of the pecuniary injury standard "to encompass nonmonetary losses." (*Bullard*, 102 Ill. 2d at 514.) In *Elliott v. Willis* (1982), 92 Ill. 2d 530, the court expressly approved the recovery of damages for loss of spousal consortium in actions under the Wrongful Death Act. In *Hall v. Gillins* (1958), 13 Ill. 2d 26, the court ruled that the broad recovery permitted in wrongful death actions obviated the common law action asserted in that case by a surviving wife and child for destruction of the family unit. Each plaintiff in *Hall* alleged, in addition to loss of support, "deprivation of the companionship, guidance, advice, love and affection of the deceased," and the court believed that "[t]he term 'pecuniary injuries' has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case." (*Hall*, 13 Ill. 2d at 31.) In *Knierim v. Izzo*

(1961), 22 Ill. 2d 73, the court placed similar reliance on the adequacy of the wrongful death recovery in refusing to recognize a common law action for loss of consortium resulting from the death of a spouse. Relying on those earlier decisions, the court in *Bullard* held that a parent may recover damages for loss of filial society in a wrongful death action. The court said:

> "Defendant urges that we await further indication from the General Assembly as to whether its intent was or is to permit parents to recover for loss of their children's society in a wrongful death action. We have concluded, however, in view of our earlier decisions indicating similar recoveries would have been allowed in cases involving loss of a parent (*Hall* [13 Ill. 2d 26]) and spouse (*Elliott* [92 Ill. 2d 530], *Knierim* [22 Ill. 2d 73]), that it would be anomalous to now deny parents this form of recovery." *Bullard*, 102 Ill. 2d at 515.

Having held that a parent may recover for loss of filial society in a wrongful death action, the court in *Bullard* went on to consider, as a related question, the makeup of the presumption of pecuniary loss that a parent may assert in the action. That presumption originally was limited to damages for lost wages and services, and it developed from "the common law rule that a parent is entitled to the services and earnings of an unemancipated minor child." (*Bullard*, 102 Ill. 2d at 516.) The court noted, however, that the social conditions that had given rise to the presumption of loss of earnings no longer obtained; the employment of children outside the home is less widespread than it once was, and their income would now contribute only a fraction of a contemporary family's child-rearing expenses. The court said:

> "We therefore hold that in this case, and in all similar cases not finally adjudicated, there can be no presumption of loss of earnings upon the death of a child since such a presumption represents an aberration from, rather than a reflection of, the typical family experience. How-

ever, we have concluded that parents are entitled to a presumption of pecuniary injury in the loss of a child's society, based on the holding expressed earlier in this opinion that the pecuniary injury for which parents may recover under the wrongful death statute includes this form of loss." (*Bullard*, 102 Ill. 2d at 517.)

The decedent in *Bullard* was a minor, and the court reserved the question whether the same presumption of pecuniary loss would apply in an action for the death of a child who had reached majority. (*Bullard*, 102 Ill. 2d at 517.) That was answered affirmatively in *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 120, which recognized a presumption of pecuniary loss to the parent in the death of an adult child.

In support of the action here, the Dralles contend that the Wrongful Death Act is designed to fill the gap in cases of fatal injuries, permitting recovery where the common law denied it, and they suggest that the recovery allowed under the statute should be no greater than the recovery allowed for nonfatal injuries. By this logic the Dralles conclude that recovery for loss of filial society, permitted by *Bullard* in cases of wrongful death, must find a counterpart in cases of nonfatal injury. Moreover, at common law a parent was allowed to bring an action for damages arising from nonfatal injuries to a minor child; recovery was limited to compensation for loss of earnings and services. (See Comment, *Negligent Injury to Family Relationships: A Reevaluation of the Logic of Liability*, 77 Nw. U.L. Rev. 794, 799 (1983).) Mr. and Mrs. Dralle contend here that the common law action should be revived and updated to permit recovery for loss of society, in the same way that *Bullard* changed the elements of the presumption of pecuniary loss available in wrongful death actions.

We do not believe that the decision in *Bullard* to permit a parent to recover damages for loss of a child's so-

ciety in a wrongful death action supports recognition of the claim for loss of filial society resulting from nonfatal injuries. The chief distinction between the claim for loss of society in a wrongful death action and its assertion here is that the nonfatally injured victim retains his own cause of action against the tortfeasor. Thus, there is no danger that the injury caused by the tortfeasor will go uncompensated, or that similar conduct in the future will be undeterred. In contrast, an action under the Wrongful Death Act affords the sole remedy for the surviving family members.

As our discussion of *Bullard* demonstrates, the basis for the holding in that case was the perceived anomaly in allowing spouses and children, but not parents, to recover for loss of society in suits brought under the Wrongful Death Act. Earlier decisions of this court had given a broad interpretation to the pecuniary loss standard in the statute, either expressly approving recovery for loss of consortium (*Elliott v. Willis* (1982), 92 Ill. 2d 530), or indicating that the pecuniary loss standard was so comprehensive that it made unnecessary the recognition of a corresponding common law action (*Knierim v. Izzo* (1961), 22 Ill. 2d 73; *Hall v. Gillins* (1958), 13 Ill. 2d 26). Thus, the statutory foundation was already in place, and the *Bullard* court was able to deduce from the case law that loss of filial society was an appropriate element of damages under the Wrongful Death Act. Therefore, we do not believe that the decision in *Bullard* supports recognition of the cause of action asserted here.

A number of policy considerations also counsel against extending *Bullard*'s reasoning to the parents' claim here. One relevant concern is the appropriate scope of tort liability. " 'Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' " (*Cockrum*

*v. Baumgartner* (1983), 95 Ill. 2d 193, 203, quoting *Tobin v. Grossman* (1969), 24 N.Y.2d 609, 619, 249 N.E.2d 419, 424, 301 N.Y.S.2d 554, 561.) To recognize claims for loss of society resulting from nonfatal injuries to a child would threaten a considerable enlargement of liability. (See *Baxter v. Superior Court* (1977), 19 Cal. 3d 461, 464-65, 563 P.2d 871, 873, 138 Cal. Rptr. 315, 317 (denying parent's claim for loss of filial society); see also *Borer v. American Airlines, Inc.* (1977), 19 Cal. 3d 441, 449, 563 P.2d 858, 863-64, 138 Cal. Rptr. 302, 307-08 (denying child's claim for loss of parental society); *Koskela v. Martin* (1980), 91 Ill. App. 3d 568, 572 (same).) Grandparents, siblings, and friends suffering similar losses of society and companionship would also seek to bring claims, if recovery were to go unchecked.

The assessment of damages for loss of society and companionship resulting from nonfatal injuries to a child would, we believe, pose undeniably difficult problems for the parties to the action and for the trier of fact. First, permitting both the injured victim and his family members to pursue their own actions would invite duplicate recoveries. In light of the intangible nature of the loss, a trier of fact would find it difficult to distinguish between the child's claim, involving pain and suffering, and the legally distinct but factually similar claim by the parents for loss of the child's society and companionship. See *Baxter*, 19 Cal. 3d at 464-65, 563 P.2d at 873, 138 Cal. Rptr. at 317; see also *Borer*, 19 Cal. 3d at 449, 563 P.2d at 863, 138 Cal. Rptr. at 307.

Moreover, to succeed in their action, parents of a nonfatally injured child would be required to present evidence of the diminution of their child's society and companionship resulting from the injury; the jury or judge would then be required to perform the sensitive, and perhaps impossible, task of evaluating—and assigning a monetary figure to—the reduced value of the parents'

relationship with the affected child. At the same time a defendant could attempt to show, in an appropriate case, the strengthened family bonds and greater appreciation for life arising from the child's injury. Thus, a parent's interest in minimizing the value of a living child contrasts sharply with the situation in a wrongful death action, where the opposite claim is made and loss is presumed. This court noted a similar paradox in *Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193, 202, which denied a parental claim for damages in a "wrongful birth" action. There the court said:

> "It can be seen that permitting recovery then requires that the parents demonstrate not only that they did not want the child but that the child has been of minimal value or benefit to them. They will have to show that the child remains an uncherished, unwanted burden so as to minimize the offset to which the defendant is entitled. The court in *Public Health Trust v. Brown* (Fla. App. 1980), 388 So. 2d 1084, 1086 n.4., convincingly noted: 'The adoption of that rule [allowing recovery] would thus engender the unseemly spectacle of parents disparaging the "value" of their children or the degree of their affection for them in open court. It is obvious, whether the conclusion is phrased in terms of "public policy," [citation] or otherwise, that such a result cannot be countenanced.' " (95 Ill. 2d at 202.)

The same concerns are at work here and similarly argue against recovery. In light of the availability of a tort remedy to the injured child, the possible multiplication of claims, and the difficulty of determining damages, we decline to extend the reasoning of *Bullard* to encompass parental recovery for loss of a child's companionship and society.

As an additional ground in support of the appellate court's decision in this case, *amicus curiae* Illinois Trial Lawyers Association observes that either spouse may bring a cause of action for loss of consortium resulting

from nonfatal injuries to the other spouse. (See *Dini v. Naiditch* (1960), 20 Ill. 2d 406.) We do not believe, however, that recognition of the spousal claim for loss of consortium requires that we also allow the parents' claim here for loss of society and companionship resulting from the nonfatal injuries to their son. The companionship and society for which recovery is sought here is not identical with the spousal claim recognized in *Dini*. Given the differences between the two concepts, there is no inconsistency, as other courts have acknowledged, in denying recovery for loss of filial—or parental—society and companionship and in allowing recovery for loss of spousal consortium. (See *Borer v. American Airlines, Inc.* (1977), 19 Cal. 3d 441, 449, 563 P.2d 858, 863, 138 Cal. Rptr. 302, 307; *Siciliano v. Capitol City Shows, Inc.* (1984), 124 N.H. 719, 725, 475 A.2d 19, 22; *De Angelis v. Lutheran Medical Center* (1983), 58 N.Y.2d 1053, 1055, 449 N.E.2d 406, 407, 462 N.Y.S.2d 626, 627.) Spousal consortium "includes, in addition to material services, elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity" (*Dini*, 20 Ill. 2d at 427; see also *Brown v. Metzger* (1984), 104 Ill. 2d 30, 34); it draws its primary animation from the marriage relationship, that basic human right that is "fundamental to our very existence and survival" (*Loving v. Virginia* (1967), 388 U.S. 1, 12, 18 L. Ed. 2d 1010, 1018, 87 S. Ct. 1817, 1824; *Boynton v. Kusper* (1986), 112 Ill. 2d 356, 368). Many of those attributes are absent from the parent-child relationship, and therefore we decline to find in the action for spousal consortium a basis for recognizing recovery of loss of filial society.

We do not consider at this time the nature or extent of the recovery in cases based on what has been termed a "direct interference" with the parent-child relationship, as opposed to the indirect interference involved here. (See Love, *Tortious Interference with the Parent-*

*Child Relationship: Loss of an Injured Person's Society & Companionship,* 51 Ind. L.J. 590, 595 n.16 (1976).) Recovery for loss of a child's companionship and society was approved in *Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859, a case relied on by the appellate court here, and in *Kunz v. Deitch* (N.D. Ill. 1987), 660 F. Supp. 679. (But see *Whitehorse v. Critchfield* (1986), 144 Ill. App. 3d 192 (denying parent's cause of action for loss of filial society resulting from alleged acts intended to induce child to abandon parental home).) As we have already noted, in *Dymek* a divorced father brought an action alleging that his former spouse and a psychiatrist had conspired to "brainwash" the couple's son in an attempt to destroy the father's relationship with the child. In *Kunz*, a widowed father brought an action against his deceased wife's parents for their alleged efforts to have the couple's child put up for adoption without the father's knowledge or approval; the child had been staying with her grandparents in Illinois following her mother's illness and death. Sitting in diversity, the district judge believed that this court would recognize the cause of action asserted by the father in that case.

The torts alleged in *Dymek* and *Kunz* did not arise as the derivative consequence of an injury to the child, as is the basis for the action asserted here. (See *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 211-12 (discussing derivative nature of wife's action for loss of consortium arising from injuries to husband).) Rather, the plaintiffs in *Dymek* and *Kunz* alleged acts intentionally and directly interfering with the parent-child relationship. We therefore conclude, as have other courts, that recognition of a cause of action for direct interference with the parent-child relationship does not entail recovery for the type of harm asserted here. See *Borer v. American Airlines, Inc.* (1977), 19 Cal. 3d 441, 451 n.3, 563 P.2d 858, 865 n.3, 138 Cal. Rptr. 302, 309

n.3; *Baxter v. Superior Court* (1977), 19 Cal. 3d 461, 466 n.3, 563 P.2d 871, 874 n.3, 138 Cal. Rptr. 315, 318 n.3; *Siciliano v. Capitol City Shows, Inc.* (1984), 124 N.H. 719, 727, 475 A.2d 19, 23.

Given our result in this case, we need not consider here Merrell-Dow's additional argument, in opposition to the parents' claim, that damages for loss of companionship and society are not recoverable in a products liability action. But see *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195 (involving spousal claim for loss of consortium resulting from unreasonably dangerous product).

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed,*
*circuit court affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.

JUSTICE CLARK, specially concurring:

I agree that the plaintiffs' claim for loss of their son's companionship and society, sounding in strict liability, was properly dismissed. But I cannot agree with the reasoning of the majority opinion.

I

No one can accuse the majority of taking the easy way out. The majority reaches out to decide this case on a broad and difficult ground, ignoring a far easier and less controversial resolution. There is agreement that a plaintiff alleging strict product liability can only recover for physical harm to his person or property. (See Restatement (Second) of Torts §402A (1965).) In fact, we have specifically held that a plaintiff in a strict product

liability action may not recover for emotional distress. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 38.) Because it involved a claim for distress by the parents of an injured minor child, *Woodill* closely resembles this case, and should have been dispositive. Loss of companionship and society do not constitute "physical harm." Moreover, policy strongly favors limitations upon recovery in strict liability actions. Strict liability dispenses with the requirement of fault. It is accordingly reasonable to hold that the nonnegligent manufacturers of defective products should be liable only for the most easily ascertainable and remediable forms of injury—physical harm and damage to property. I would have heartily agreed with a holding confined to this narrow and reasonable proposition.

## II

But I cannot agree with the majority's actual holding, which is neither narrow nor reasonable. We have previously determined that parents in a wrongful death action are entitled to a presumption of injury for the loss of their child's society, without regard to whether their child is a minor (*Bullard v. Barnes* (1984), 102 Ill. 2d 505), or an adult (*Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107). Our reasoning in those cases simply extended to the parents of a fatally injured child the rights previously granted to the surviving child of a fatally injured parent (*Hall v. Gillins* (1958), 13 Ill. 2d 26) and to the surviving partner of a marriage (*e.g., Elliot v. Willis* (1982), 92 Ill. 2d 530). We have also recognized that one marital partner may recover for loss of society and consortium caused by nonfatal injuries to the other. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406.) In sum, we have previously recognized as compensable injuries to a wide variety of family ties and relationships. These prior cases are not determinative. But together with cases on point

from other jurisdictions (*Howard Frank, M.D., P.C. v. Superior Court* (1986), 150 Ariz. 228, 722 P.2d 955; *Yordon v. Savage* (Fla. 1973), 279 So. 2d 844; *Sizemore v. Smock* (1986), 155 Mich. App. 745, 400 N.W.2d 706, *appeal granted* (1987), 428 Mich. 873, 402 N.W.2d 469; *Norvell v. Cuyahoga County Hospital* (1983), 11 Ohio App. 3d 70, 463 N.E.2d 111; *Shockley v. Prier* (1975), 66 Wis. 2d 394, 225 N.W.2d 495), they strongly suggest that we should allow recovery to a parent who, through nonfatal injury, suffers the loss of his child's society.

The majority attempts to distinguish these cases in two different ways. Cases recognizing loss of a child's society as the result of fatal injury, such as *Bullard*, are treated as distinguishable because they involved actions under our wrongful death act, while cases which involved nonfatal injuries, such as *Dini*, are distinguished on the basis that they involved damage to marital rather than filial relationships. The majority is correct in stating that these factual distinctions exist. But I am not persuaded that they compel the majority's favored conclusion. A difference which makes no difference is no difference. Unless the two distinctions—between fatal and nonfatal injuries and between marital and filial relationships—relate to some underlying policy which actually supports a different result, they do not and should not matter.

The origins of the common law prohibition against parental recovery for loss of a child's society reveal the poverty of the majority's reasoning. At common law, the consortium action was derived from the right of a master to recover for tortious injury to his servants, since in such a case, the master would suffer a loss of services in addition to whatever loss the servant himself suffered. (W. Prosser & W. Keeton, Torts §125, at 931 (5th ed. 1984).) The action was gradually expanded to allow recovery for loss of the services of a wife (Note, *The*

*Child's Right to Sue for Loss of a Parent's Love, Care, and Companionship Caused by Tortious Injury to the Parent,* 56 B.U.L. Rev. 722, 724 (1976)), or of a child (Note, *Torts—Parents Recovery for Loss of Society and Companionship of Child,* 80 W. Va. L. Rev. 340, 341 (1978)). In all three instances the consortium action reflected a patriarchal society in which wives, servants, and children were all treated as the wards or chattels of the husband/master/father. In the case of a wife, "consortium" came to include not only material services, but also "elements of companionship, felicity, and sexual intercourse, all welded into a conceptualistic unity." (*Dini,* 20 Ill. 2d at 427.) With the belated recognition that a wife could also recover for loss of consortium, the spousal action was freed from its patriarchal origins.

The action for loss of a child's services, however, has remained mired in the mental world of our ancestors. When brutal child labor flourished, and "ample work could be found for the agile bodies and nimble fingers of small children" (*Wycko v. Gnodtke* (1960), 361 Mich. 331, 335, 105 N.W.2d 118, 120), it may have been reasonable to regard the child's earnings as the crucial component of the child's value to his parent. Today, however, "a plethora of laws aimed at children, *e.g.,* child labor and compulsory education laws, virtually guarantees that children will not be an economic asset to their parents. Children are now valued for their society and companionship" (*Howard Frank, M.D., P.C. v. Superior Court* (1986), 150 Ariz. 228, 232, 722 P.2d 955, 959), and "[t]he true significance of a parent's action under modern practice is that it compensates the parents' emotional losses when their child has been injured" (56 B.U.L. Rev. at 731-32). Only child performers or prodigies are likely to make enough money to justify a parental action for loss of services. In modern times, compensation only for the

value of a minor's services usually means no compensation at all.

While the common law rationale for differing treatment of spousal and filial consortium actions cannot therefore justify denial of an action for loss of a child's society, I am equally unpersuaded by the majority's contention that the continued difference in treatment is somehow justified by inherent differences in the marital and filial relationships. The majority contends that many of the attributes of a marital relationship, such as "companionship, felicity, and sexual intercourse," are "absent from the parent-child relationship." (124 Ill. 2d at 72.) But which attributes are missing? The majority cannot be seriously contending that parent-child relations lack felicity or companionship. What the majority must mean, although reticence apparently prevents it from making the distinction explicit, is that normal parent-child relationships are lacking in one key ingredient: sex.

I do not contend that, setting sex aside, filial and marital relations can be equated. While they share much in common, they differ in the texture of their emotional fabric. But I am puzzled by the majority's implicit assumption that the relationship between parent and child is somehow less important than the relationship between husband and wife. Marriage is a basic right "fundamental to our very existence and survival." (*Loving v. Virginia* (1967), 388 U.S. 1, 12, 18 L. Ed. 2d 1010, 1018, 87 S. Ct. 1817, 1824.) But it is fundamental to our very existence and survival in great part because it is the vessel through which we bear and rear our successors. It provides us with a tangible human link to the future. It is very late in the day to deny that a parent—even an unmarried parent—has a fundamental right to the " 'the companionship, care, custody, and management of his or her children.' " (*Santosky v. Kramer* (1982), 455 U.S. 745, 758, 71 L. Ed. 2d 599, 610, 102 S. Ct. 1388, 1397.)

An injury to an interest in the companionship of a child is no less wounding than an injury to an interest in the companionship of a spouse.

If the majority's distinction between filial and marital relationships makes very little sense, its attempt to distinguish between fatal and nonfatal injury makes even less. I agree with the Arizona Supreme Court that "no meaningful distinction can be drawn between death and severe injury where the effect on consortium is concerned. Often death is separated from severe injury by mere fortuity ***." (*Howard Frank, M.D., P.C. v. Superior Court* (1986), 150 Ariz. 228, 230, 722 P.2d 955, 957.) In addition,

"It is easy to see that the loss of a child through his death takes from his parents the society and companionship that is the essence of the lost relationship. But consider the magnitude of the loss of society and companionship that occurs when a normal [child] is suddenly reduced to a blind, nearly deaf, partially paralyzed child with a mental age of three. The parental expectations for the continuation of the family relationship are the same in either case. That the parents still have their son to love and care for is a factor to consider in determining the extent of their loss, but does not negate the loss. They have sustained a genuine loss in the nature of the society and companionship they can anticipate receiving from their son as a consequence of his injuries. Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured *** is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent is also confronted with his loss each time he is with the child and experiences again the child's diminished capacity to give comfort, society, and companionship." Note, *The Parental Claim for Loss of Society and Companionship Resulting from the Negligent Injury of a*

*Child: A Proposal for Arizona*, 1980 Ariz. St. L.J. 909, 923.

I also find unpersuasive the "policy considerations" which the majority believes distinguish nonfatal and fatal injuries. Recognizing a cause of action will not open the floodgates of litigation or let loose the demons from Pandora's Box. Loss of society is an injury to familial relationships which has never been applied to relations among friends, or even to noncustodial relatives. Moreover, in the vast majority of cases, the child's injuries will neither be so serious nor so permanent as to support a claim for loss of society. Sudden increases in the scope of liability are a legitimate concern, especially where, as here, damages are difficult to quantify. But a general fear of increasing liability cannot justify a court in subjecting liability to arbitrary limits. Unlike the legislature, which can curtail liability either by imposing dollar limits on awards or by prohibiting recovery altogether, we must base any limits we impose on rational distinctions between cases. The distinction between fatal and nonfatal injury is not rational.

The majority also raises the spectre of a "double recovery," *i.e.*, of a jury which compensates both the child and the parent for the child's pain and suffering. This problem, even assuming it really exists, is equally present in an action for loss of spousal consortium. Moreover, it is a problem which can be rectified by carefully instructing the jury to distinguish between the injuries of the parent and the injuries of the child. Indeed, the majority here has resurrected the same argument which was rejected as implausible in *Dini*, 20 Ill. 2d at 426-27.

Lastly, the majority relies on the specious argument also used to deny recovery in such decisions as *Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193, and *Goldberg v. Ruskin* (1986), 113 Ill. 2d 482. Given my dissents in

those cases, it will come as no surprise that I am still unable to understand why claims for "wrongful birth" and "wrongful life" involve some sort of paradoxical denigration of the value of human existence. I am still less able to understand why a claim that an injury has deprived a child of the ability to provide the normal degree of love and companionship is "paradoxical." Is it any more paradoxical for the plaintiff in an ordinary personal injury case to argue that his own capacity to enjoy life has been diminished by pain and suffering? Any claim of personal injury necessarily involves a claim that the plaintiff's own existence is, at least in some respect, less "valuable" than before, and that the plaintiff deserves compensation to make up for that loss in value. The paradoxes which perplex the majority are self-created; they cannot and should not compel us to deny compensation to those actually injured by the carelessness of others.

For these reasons, I specially concur.