**2025 IL 130931**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130931)

VIERA HULSH, Appellant, v. MAYA HULSH *et al.*, Appellees.

*Opinion filed May 22, 2025.*

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    Appellant, the mother of two minor children, successfully regained custody of her children in an action filed in federal district court in Illinois against the children's father under the Convention on the Civil Aspects of International Child Abduction (Hague Convention) and its implementing legislation, the International Child Abduction Remedies Act (ICARA) (22 U.S.C. § 9001 *et seq.* (2018)). Appellant then filed a state court action in Cook County against appellees, her

former mother-in-law and brother-in-law, alleging, *inter alia*, tortious interference with her custodial rights and aiding and abetting tortious interference with her custodial rights, seeking to recover expenses that appellant incurred in the federal district court action to regain custody of her children. The Cook County circuit court dismissed those claims for failure to state a claim, and the appellate court affirmed the dismissal. 2024 IL App (1st) 221521. The appellate court concluded that Illinois courts have declined to recognize a cause of action for tortious interference with a parent's custodial rights, regardless of the damages claimed.

¶ 2      The issue before us is whether this court should recognize such a claim despite our prior holdings where we have consistently declined to judicially create a cause of action for tortious interference with the parent-child relationship. Today, we reiterate our position that Illinois does not presently recognize the tort of interference with the parent-child relationship, regardless of the damages claimed, and continue to defer the question of whether to recognize such a cause of action to our legislative branch. Accordingly, we affirm both lower courts and the dismissal of the tortious interference claims.

¶ 3      BACKGROUND

¶ 4      The following facts were alleged in the verified complaint filed in the circuit court. As the claims before us were dismissed for failure to state a claim, we accept the allegations as true for the purposes of this appeal. See *Rice v. Marathon Petroleum Corp.*, 2024 IL 129628, ¶ 22 (when faced with a motion to dismiss a complaint as legally insufficient, all well-pleaded facts in the complaint are taken as true). Jeremy Hulsh, a citizen of the United States and Israel, and appellant, Viera Hulsh, a citizen of Slovakia and Israel, divorced in 2019. During the marriage, two children were born, in Israel. Both children hold American, Israeli, and Slovakian passports. In the divorce proceedings in Slovakia, Viera was granted primary custody of the two children, who resided with her in Slovakia. Jeremy was granted visitation rights. On or about October 24, 2019, Jeremy removed the children from Slovakia without Viera's permission, via a car to Hungary, a private jet to London, a commercial flight to Toronto, and a car to Chicago, Illinois.

¶ 5      On November 5, 2019, Viera filed a petition in federal district court in Chicago against Jeremy, seeking the return of the children pursuant to the Hague Convention

and ICARA. Jeremy did not contest that he abducted the children; rather, he invoked two treaty exceptions because he believed that Viera's paramour had pedophilic tendencies. In an order dated July 21, 2020, the federal district court granted Viera's petition, finding that Jeremy wrongfully removed the children from Slovakia in violation of article III of the Hague Convention and did not meet his burden of establishing any treaty exceptions. Jeremy was ordered to return the children to Viera in Slovakia, at his own expense.

¶ 6    After ordering the return of the children, the district court granted Viera leave to submit a petition for statutory fees and costs under section 9007 of ICARA (22 U.S.C. § 9007(b)(3) (2018)). Viera filed an initial fee petition on August 11, 2020, which was amended on January 23, 2021, requesting $496,743.30 in attorney fees, expenses, and costs. In the interim period, on August 31, 2020, Jeremy filed for bankruptcy. When ruling on the amended fee petition, the district court rejected any fees related to Jeremy's bankruptcy proceedings on the basis that those fees were unrelated to the purpose of attorney fees under ICARA, which is to restore the applicant to the financial position she would have been in had there been no removal or retention. After reviewing the attorney fees incurred in the ICARA action, the district court found that $315,562.50 in attorney fees were recoverable. However, the district court reduced the attorney fees by one-fourth to $239,955, balancing Jeremy's ability to pay against Viera's ability to adequately care for the children, while meeting the policy goals of ICARA. The district court rejected any expenses incurred after the children were returned and declined to award future expenses on the grounds that such expenses were complete conjecture. The district court also granted $25,141.87 in costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920 (2018).

¶ 7    While the fee petition was pending before the federal district court, on February 22, 2021, Viera filed a verified complaint for damages and declaratory relief in the circuit court of Cook County against appellees, Maya Hulsh and Oren Hulsh, the children's paternal grandmother and uncle, respectively. The complaint alleges that Jeremy will likely claim financial inability to pay any federal district court fee and expense award and states three claims against appellees: (1) tortious interference with custodial rights, (2) aiding and abetting tortious interference with custodial rights, and (3) intentional infliction of emotional distress. Viera alleged that Maya and Oren knowingly interfered with Viera's custodial rights when they assisted

Jeremy in abducting the children from Slovakia in October 2019. According to the complaint, Maya paid for a charter plane to take Jeremy and the children from Slovakia to England. Oren paid for a rental car for Jeremy to drive the children from Canada into the United States. Maya provided housing for Jeremy and the children in the United States, paying their living expenses after they came to the Chicago area and otherwise secreting the whereabouts of the children from Viera. Oren also helped harbor and care for the children, keeping their whereabouts unknown to Viera for two months in 2019, and assisted Jeremy with expenses. In addition, Maya and/or Oren paid for Jeremy's legal expenses. Viera sought to recover damages in the amount of attorney fees and expenses incurred in pursuing custody in federal district court; attorney fees incurred in challenging Jeremy's bankruptcy case; past and future lost income, transportation expenses, and living expenses incurred in litigating the district court case, litigating the bankruptcy case, litigating the tort case, and other actions necessary to collect her district court award; and mental anguish. Viera also sought a declaratory judgment for future lost income, attorney fees, and expenses in litigating Jeremy's bankruptcy case and enforcing the district court's fee and expense award.[1] In addition, Viera sought punitive damages.

¶ 8        Maya and Oren each filed motions to dismiss the complaint for failure to state a claim pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2022)), alleging that the causes of action asserted by Viera did not exist under state law. The circuit court dismissed counts I and II of the complaint, concluding that there was no cause of action for tortious interference with custodial rights in Illinois. It denied the motion to dismiss count III, which alleged intentional infliction of emotional distress. Subsequently, Viera voluntarily dismissed the claim of intentional infliction of emotional distress and appealed the circuit court's dismissal of the tortious interference with custody claims.

¶ 9        The appellate court affirmed the dismissal. 2024 IL App (1st) 221521. It found that "Illinois courts have declined to recognize tortious interference with custodial rights as a cause of action regardless of the damages claimed." *Id.* ¶ 15. It declined

---

[1]On October 25, 2021, the bankruptcy court declared that Jeremy's fee and costs debt of $265,096.87 was nondischargeable as a domestic support obligation under section 523(a)(5) of the Bankruptcy Code (11 U.S.C. § 523(a)(5) (2018)).

to recognize a new cause of action for tortious interference with custodial rights, finding it was the prerogative of this court or the legislature to create new causes of action. *Id.* ¶ 19.

¶ 10    Presiding Justice Oden Johnson dissented, acknowledging that an action for tortious interference with custodial rights has not been recognized in Illinois but arguing that public policy dictates recognizing the cause of action. *Id.* ¶ 33 (Oden Johnson, P.J., dissenting).

¶ 11    We granted Viera's petition for leave to appeal to this court.

¶ 12                                ANALYSIS

¶ 13    The circuit court dismissed Viera's complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)). "A section 2-615 motion tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted." *Project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 18 (citing *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 25). "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Our review of a trial court's dismissal of a complaint pursuant to section 2-615 of the Code is *de novo*. *Id.*

¶ 14    Viera acknowledges that this court has previously declined to recognize a cause of action in Illinois for tortious interference with a parent-child relationship and has deferred to the legislature on the issue of whether to recognize such a cause of action. However, Viera contends that this court has avoided addressing the exact issue that she raises. Specifically, Viera contends that she is not seeking damages arising from damage to the parent-child societal relationship but, rather, she is seeking to recover purely economic damages in the form of the expenses incurred in regaining custody of her children after they were kidnapped. Viera further argues, as a policy decision, Illinois should allow custodial parents to recover expenses incurred in regaining custody of kidnapped children. In fact, Viera contends that disallowing a claim for economic losses resulting from kidnapping

actually interferes with the parent-child relationship. Viera argues that we should formally adopt section 700 of the Restatement (Second) of Torts, titled "Causing Minor Child to Leave or Not to Return Home" (Restatement (Second) of Torts § 700 (1977)), and impose the elements of the Restatement (Second) of Torts as the elements of a cause of action for a custodial parent to recover economic losses sustained in recovering custody from those that intentionally interfere with the parent-child relationship.

¶ 15    Appellees argue that we should affirm the lower courts because Illinois courts have long rejected Viera's proposed cause of action. Viera's distinction between indirect and direct parental injury does not change the analysis. Policy considerations do not support departing from this precedent to create a new tort of intentional interference with custodial rights. Notably, Viera had a remedy to recover custody of her children and for reimbursement of her expenses in recovering custody of her children, which she pursued, successfully obtaining custody of her children and a judgment for expenses against the named respondent in the ICARA action, Jeremy.

¶ 16    A basic tenet of tort law is that a cause of action must be based upon a recognized tort; there must be a duty, a breach of that duty, and resulting damages. *West American Insurance Co. v. Sal E. Lobianco & Son Co.*, 69 Ill. 2d 126, 129-30 (1977); see *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 994 (2011) (claim based on violation of a restatement was properly dismissed for failing to allege a duty owed to plaintiff when supreme court had not adopted the applicable restatement). Viera is clear that she is only asking for, as damages, the expenses that she incurred in recovering custody of her children. However, the damages sought must arise from a recognized tort. Viera contends that tort is described by section 700 of the Restatement (Second) of Torts. She acknowledges that section 700 has not been recognized in Illinois, but she contends that the tort exists and should now be recognized.

¶ 17    Section 700 of the Restatement (Second) of Torts is found in chapter 33 of the Restatement (Second) of Torts, titled "Relation of Parent and Child," topic 1, titled "Direct Interference With Relation." See Restatement (Second) of Torts ch. 33, topic 1 (1977). Section 700, titled "Causing Minor Child to Leave or Not to Return Home," provides:

"One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." *Id.* § 700.

¶ 18   As both the majority and the dissent recognized below, Illinois courts have thus far declined to recognize a cause of action for tortious interference with custodial rights. 2024 IL App (1st) 221521, ¶ 15 (majority opinion); *id.* ¶ 33 (Oden Johnson, P.J., dissenting). The majority below relied primarily on *Whitehorse v. Critchfield*, 144 Ill. App. 3d 192 (1986), in reaching its conclusion that Illinois courts have never recognized a cause of action for tortious interference with custodial rights, regardless of the damages claimed. 2024 IL App (1st) 221521, ¶ 15 (majority opinion).

¶ 19   In *Whitehorse*, a father brought suit against four adults who induced his 17-year-old daughter to leave his care, alleging tortious interference with his parental custodial right and that such interference also constituted intentional infliction of emotional distress. *Whitehorse*, 144 Ill. App. 3d at 193. The father sought to recover damages for the deprivation of the care, custody, and services of his daughter; emotional distress; expenses; and costs. *Id.* The trial court dismissed the action on the ground that tortious interference with a parent's custodial rights was not a statutorily or judicially recognized cause of action in Illinois. *Id.* The Fourth District affirmed the dismissal, declining to recognize a cause of action based upon a tortious interference with a custodial parent's right to custody, care, and companionship of his child. *Id.* at 194. It reasoned that, "because of its multiple ramifications and potential for abuse, [it] is more properly a subject for the legislature's consideration." *Id.* While the legislature had addressed this issue by enacting criminal statutes, it had not enacted any civil statutes creating a cause of action to recover for interference with a parent's custodial rights. *Id.* at 195. In concluding that Illinois did not recognize the cause of action, the *Whitehorse* court acknowledged section 700 of the Restatement (Second) of Torts and the fact that it had been adopted by many jurisdictions but not Illinois. *Id.* at 194.

¶ 20   Prior to today, we have not been presented with the question of whether to recognize the tort of interference with the parent-child relationship in the context of interfering with a parent's custodial relationship with her child. Rather, to

support its position that Illinois has repeatedly declined to recognize the tort of interference with a parent's custodial right and that holding should apply to cases of child abduction, the appellate court below cited cases from this court that have discussed the issue of interference with the parent-child relationship in the context of nonfatal injuries to the child (*Dralle v. Ruder*, 124 Ill. 2d 61 (1988); *Vitro v. Mihelcic*, 209 Ill. 2d 76 (2004)) and in the context of intentional interference with the parent-child relationship via psychiatric therapy (*Doe v. McKay*, 183 Ill. 2d 272 (1998)). While the issues raised in those cases admittedly vary from the precise issue before us, the underlying conclusions regarding interference with the parent-child relationship are applicable and direct our opinion. Thus, we will begin our analysis by addressing the three primary supreme court cases cited by the appellate court below.

¶ 21    In *Dralle*, parents brought suit against the manufacturer and distributor of a drug that the mother ingested while pregnant, seeking to recover damages for nonfatal injuries to their child allegedly caused by the drug. *Dralle*, 124 Ill. 2d at 62-63. The parents sought to recover compensation for the loss of their injured child's companionship and society. *Id.* at 63. This court upheld the dismissal of that claim, declining to recognize a cause of action for the loss of the companionship and society of a living child. *Id.* at 69. In doing so, the *Dralle* court distinguished *Bullard v. Barnes*, 102 Ill. 2d 505 (1984), which had allowed claims for loss of a child's society in a wrongful death suit, finding that the *Bullard* court's holding was dependent on the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, ¶¶ 1 to 2.2) and, without a statutory foundation to support the extension of a claim for loss of a child's society in a nonfatal case, *Bullard* did not support recognizing a cause of action for a living child. *Dralle*, 124 Ill. 2d at 69-70. In reaching its decision, the *Dralle* court acknowledged the difference between the claim at issue before it, which arose as a derivative consequence of an injury to the child, and acts that intentionally and directly interfered with a parent-child relationship, and stated that it specifically was not considering the nature or extent of recovery in cases of direct interference with the parent-child relationship, noting that *Dymek v. Nyquist*, 128 Ill. App. 3d 859 (1984), and *Kunz v. Deitch*, 660 F. Supp. 679 (N.D. Ill. 1987), had allowed such claims and *Whitehorse*, 144 Ill. App. 3d 192, had rejected them. *Dralle*, 124 Ill. 2d at 73.

¶ 22    The issue left open in *Dralle*, whether a plaintiff could recover for direct interference with a parent-child relationship, was before the court in *Doe*. In *Doe*, a father sought to recover damages from his daughter's therapist, related to the psychiatric treatment of the daughter. *Doe*, 183 Ill. 2d at 285-86. The father alleged, *inter alia*, intentional interference with the parent-child relationship. *Id.* at 273. The *Doe* court acknowledged the issue left open by *Dralle* and the split in authority evidenced by *Kunz*, *Whitehorse*, and *Dymek*. *Id.* at 285-86. It held that the holding of *Dralle* did not depend on a distinction between direct and indirect interference. *Id.* at 286. The *Doe* court found that the same considerations in *Dralle* that precluded recovery for lost society and companionship also applied when the interference with the parent-child relationship was direct. *Id.*

¶ 23    Thereafter, this court revisited a claim of interference with a parent-child relationship in the context of nonfatal injuries to a child in *Vitro*, where parents attempted to recover for the loss of society of a child caused by negligent interference with a family relationship. *Vitro*, 209 Ill. 2d at 79-80. In *Vitro*, we reaffirmed *Dralle*, primarily reasoning that there was no statutory basis for an action for the loss of filial consortium resulting from a child's nonfatal injuries. *Id.* at 88.

¶ 24    In support of her claim that Illinois should recognize the tort of interference with a parent's custodial rights, Viera acknowledges the above holdings but argues that they are distinguishable. Instead, Viera relies primarily on *Dymek*, *Kunz*, and cases from other jurisdictions recognizing the tort of interference with custodial rights. Viera contends that we should adopt the elements of section 700 of the Restatement (Second) of Torts, but only insofar as to claims for economic damages.

¶ 25    The cases relied upon by Viera are distinguishable. In *Dymek*, a divorced father sued his ex-wife and his son's psychiatrist, alleging they conspired to brainwash the son and destroy the society and companionship the father had with his son. *Dymek*, 128 Ill. App. 3d at 860-61. Relying on wrongful death caselaw, the First District recognized an independent tort claim for loss of a child's society and companionship. *Id.* at 868. However, while not specifically overruled by *Doe*, *Dymek* is inconsistent with and implicitly overruled by *Doe*.

¶ 26    Another case relied upon by Viera, *Kunz*, is closer to the fact pattern at issue here. In *Kunz*, maternal grandparents put their granddaughter up for adoption

without the father's approval after the mother died. *Kunz*, 660 F. Supp. at 680. The father contested the adoption, won, and was awarded custody of the child. *Id.* at 681. The father filed suit against the grandparents, claiming damages for intentional interference with his parental right to the child's society. *Id.* Sitting in diversity, the federal district court noted that the Illinois Supreme Court had not addressed whether an independent cause of action existed for loss of a child's society. *Id.* at 682. It noted that there was a conflict between the districts, and it predicted that the Illinois Supreme Court would not follow *Whitehorse* but would adopt the holding of the *Dymek* court, concluding that Illinois would recognize the claim. *Id.* at 683. However, *Dralle*, *Vitro*, and *Doe* were subsequently decided, rendering the prediction incorrect. See *Mitchell v. Durham Enterprises, Inc.*, 99 F.4th 978, 987 (7th Cir. 2024) (federal courts sitting in diversity attempt to predict how the state's supreme court would rule on unaddressed issues but are bound by that court's controlling decisions); see also *Transamerica Insurance Co. v. Henry*, 904 F.2d 387, 390 (7th Cir. 1990) (" 'Federal courts of course can sometimes make incorrect predictions as to undecided questions of state law.' " (quoting *Collins Co. v. Carboline Co.*, 837 F.2d 299, 301 (7th Cir. 1988))).

¶ 27 From this caselaw, it is clear that we have deferred to our legislative branch and declined to judicially create a tort cause of action for interference with the parent-child relationship. Viera acknowledges this but, seeking a sweeping policy change, asks us to depart from this precedent and recognize a limited tort of interference with the parent-child relationship, where a plaintiff alleges interference with custody and only seeks to recover the expenses incurred in regaining custody. This precise relief is, however, provided for by the provisions of the Hague Convention.

¶ 28 Congress has implemented the provisions of the Hague Convention with ICARA (22 U.S.C. § 9001 *et seq.*). Under ICARA, a petitioner may commence a civil action to obtain the return of a child wrongfully removed or retained against persons who interfere with those custodial rights. See *id.* § 9003(b) ("Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action ***."); *id.* § 9002(6) ("the term 'respondent' means any person against whose interests a petition is filed in court, in accordance with this chapter, which seeks relief under the Convention"); see also Elisa Pérez-Vera, Explanatory Report, 3 Acts and Documents of the

Fourteenth Session, Hague Conference on Private International Law, Child Abduction 426, 451 (1982), https://assets.hcch.net/docs/05998e0c-af56-4977-839a-e7db3f0ea6a9.pdf [https://perma.cc/UZ4T-3UDX] (under the Hague Convention, responsibility for child abduction was not meant to be limited "exclusively to one of the parents"). When a child is ordered returned pursuant to the provisions of ICARA, the respondents may be ordered to pay the necessary expenses incurred by the petitioner. See 22 U.S.C. § 9007(b)(3) ("Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner *** unless the respondent establishes that such order would be clearly inappropriate."); *Neves v. Neves*, 637 F. Supp. 2d 322, 347 (W.D.N.C. 2009) (allowing fees and costs against family friends who assisted dad in secreting children). Viera was not only aware of the possibility of an action under ICARA; she brought such an action against Jeremy and successfully regained custody of her children. Viera also received an expense award against Jeremy, the sole respondent in the ICARA action.

¶ 29        We further note that the Illinois legislature has acted in this area, by enacting statutes that impose criminal sanctions rather than civil penalties. 720 ILCS 5/10-5 (West 2022) (the offense of child abduction includes intentionally concealing the child from the lawful custodian); *id.* § 10-5.5 (unlawful interference with visitation or parenting time is a petty offense); *id.* § 10-7 (aiding or abetting child abduction is a Class 4 felony). Whether a " 'different balance should be struck' " between civil and criminal remedies is a question that should be addressed to the legislature. *Martin v. Goodrich Corp.*, 2025 IL 130509, ¶ 32 (quoting *Folta v. Ferro Engineering*, 2015 IL 118070, ¶ 43); see *Charles v. Seigfried*, 165 Ill. 2d 482, 493 (1995) ("The primary expression of Illinois public and social policy should emanate from the legislature. *** The members of our General Assembly, elected to their offices by the citizenry of this State, are best able to determine whether a change in the law is desirable and workable.").

¶ 30        Lastly, we reject the contention that there is a universal trend in other states to adopt the tort of interference with the parent-child relationship. While a number of states have done so, other states have declined to recognize the tort. Compare *Plante v. Engel*, 469 A.2d 1299 (N.H. 1983) (relied on its own constitution and section 700 of the Restatement (Second) of Torts to recognize tort of intentional

- 11 -

interference with custody), and *Casivant v. Greene County Community Action Agency, Inc.*, 652 N.Y.S.2d 115, 117 (App. Div. 1996) (recognizing a narrow tort of intentional interference with parent's custodial rights in cases involving violent abduction, willful disobedience of a court custody order, and wrongful detention), with *Zaharias v. Gammill*, 1992 OK 149, 844 P.2d 137 (not recognizing the tort of intentional interference with custodial rights because it was not in the best interests of the child and other laws provided redress), and *Larson v. Dunn*, 460 N.W.2d 39, 46 (Minn. 1990) (same).

¶ 31    We have repeatedly taken the position that, while it is within our judicial authority to adopt a restatement and make it binding upon Illinois courts, it is more appropriate for the legislative branch to decide whether a new cause of action should be created in Illinois. See *Tilschner*, 409 Ill. App. 3d at 990 ("A restatement is not binding on Illinois courts unless it is adopted by our supreme court."). Thus, we continue to decline to judicially recognize a cause of action for tortious interference with the parent-child relationship.

¶ 32                                    CONCLUSION

¶ 33    Viera seeks damages in the form of the expenses that she incurred in regaining custody of her children. She contends that Illinois has only refused to recognize a cause of action for tortious interference with the parent-child relationship when the damages are based on the lost or damaged society between the parent and the child but that it has not addressed the tort in the context of purely financial losses. Admittedly, the financial cost of recovering custody could be an easier calculus than the cost of any damage to the societal relationship between a parent and child. However, under Illinois law, damages are intrinsically tied to the tort; there must be an underlying tort for the plaintiff to recover. This court has never addressed section 700 of the Restatement (Second) of Torts, and it has not adopted that section implicitly or otherwise. We defer this question to our legislative branch, which has operated in this area by enacting criminal statutes addressing interference with custody. As of today, however, the legislature has refrained from enacting any civil statutes that allow recovery based on section 700 of the Restatement (Second) of Torts or its elements, despite the caselaw that has developed in the nearly 40 years since *Whitehorse*.

¶ 34        For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the circuit court's dismissal of Viera's complaint.

¶ 35        Judgments affirmed.