JIMMIE YAZZIE WHITEHORSE, Plaintiff-Appellant, v. LARRY L. CRITCH-FIELD *et al.*, Defendants (Thomas P. Murphy *et al.*, Defendants-Appellees).

Fourth District   Nos. 4—85—0870, 4—86—0066 cons.

Opinion filed June 3, 1986.

Bruce Goldstein, of Edwardsville, and Joan O'Connell, of DNA-People's Legal Services, of Shiprock, New Mexico, for appellant.

William H. Strang, of Jerseyville, for appellees Thomas P. Murphy and Linda Murphy.

George P. Wittman, of Jerseyville, for appellees Larry L. Critchfield and Edith Critchfield.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff appeals the dismissal of his complaint. We affirm.

On March 30, 1984, plaintiff filed a four-count complaint, naming Larry Critchfield, Edith Critchfield (Critchfields), Thomas Murphy, and Linda Murphy (Murphys) as defendants. Plaintiff concedes that all counts of the complaint are based upon tortious interference with a parent's custodial rights. The factual allegations of the complaint are taken as true for purposes of the motion to dismiss. (*Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859, 469 N.E.2d 659.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts could be proved which would entitle plaintiff to re-

cover. 128 Ill. App. 3d 859, 469 N.E.2d 659.

In the introductory portion of his complaint, plaintiff made the following allegations. He is a member of an Indian tribe and resides in Utah. The Murphys, while living in Utah and teaching at the high school attended by his 17-year-old daughter, Marlene, involved themselves in Marlene's personal life and eventually removed her from his custody. The Murphys attempted to convert Marlene to their religion, counseled, and induced her to abandon her father's home. During early 1982, the Murphys purchased a one-way airline ticket for Marlene under a fictitious name, escorted her to the airport, and placed her on a plane bound for Grafton, Illinois. The Murphys knew at all times that plaintiff did not consent to Marlene's removal from his home. The Critchfields, knowing plaintiff did not consent to Marlene's departure, met her plane and took her to their home in Grafton, where they counseled, compelled, and induced her not to return to plaintiff's home or reveal her location to him.

The complaint further alleged that in April and May of 1982, the Critchfields induced Marlene to write fictitious letters to the Murphys and her grandfather. The letters were mailed from Arizona and Utah in an effort to mislead plaintiff, causing him emotional distress. During April and May 1982, the Murphys made false statements to the local police, school officials, and the Federal Bureau of Investigation concerning their knowledge of Marlene's disappearance and her whereabouts. The Critchfields on June 18, 1982, filed a petition to adopt Marlene, who was then within four days of her 18th birthday. In late June 1982, the Critchfields returned Marlene to plaintiff.

Count I alleged that as a result of the above actions, the defendants deprived plaintiff of the care, custody, and services of his daughter for four months and inflicted severe emotional distress. Plaintiff asked for his expenses, costs, and damages for the emotional distress. Count II realleged the introductory paragraph and realleged count I, stating that the conduct was intentional, outrageous, and inflicted severe emotional distress. Counts III and IV realleged all of the previous counts and the introductory paragraph and asserted that defendants conspired to deprive plaintiff of Marlene's custody without complying with the legal process. The Critchfields aided and abetted the Murphys in carrying out their plan.

The Critchfields answered the complaint. However, the Murphys filed a motion to dismiss and an amended motion to dismiss, alleging that tortious interference with the custodial parent's relations with his child is neither statutorily nor judicially recognized as an action in Illinois. The trial court granted the Murphy's motion to dismiss. Plain-

tiff appealed, and this court dismissed the appeal. (*Whitehorse v. Critchfield* (1985), 137 Ill. App. 3d 1166 (unpublished order).) On plaintiff's motion, the trial court amended its order, adding that there was no just reason to delay enforcement or appeal. The trial court also allowed the Critchfields' motion to withdraw their answer and granted their motion to dismiss. This court consolidated plaintiff's appeal as to all defendants.

The parties agree that plaintiff seeks recovery based upon Illinois law. Plaintiff argues that defendants' actions tortiously interfered with his parental rights and such interference also constituted intentional infliction of emotional distress. Plaintiff urges this court to recognize a cause of action based upon a tortious interference with a custodial parent's right to custody, care, and companionship of his child. We decline to do so, feeling this area, because of its multiple ramifications and potential for abuse, is more properly a subject for the legislature's consideration. The tort of outrage in this case is derivative of the tort of parental interference. Since we find that the latter tort does not exist in this State, the former must also fall.

Section 700 of the Restatement of Torts states:

> "One who, with the knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." Restatement (Second) of Torts sec. 700 (1977).

This section of the Restatement has been adopted by many jurisdictions which regard the action as the natural extension of a father's common law right to his child's services. (See *Lloyd v. Loeffler* (7th Cir. 1982), 694 F.2d 489; *Bennett v. Bennett* (2d Cir. 1982), 682 F.2d 1039; *Ruffalo v. United States* (W.D. Mo. 1984), 590 F. Supp. 706, aff'd (8th Cir. 1983), 702 F.2d 710; *Rosefield v. Rosefield* (1963), 221 Cal. 2d 431, 34 Cal. Rptr. 479; *Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251; *Spencer v. Terebelo* (La. App. 1979), 373 S.2d 200; *Brown v. Brown* (1953), 338 Mich. 492, 61 N.W.2d 656; *Kramer v. Leineweber* (Mo. App. 1982), 642 S.W.2d 364; *Kipper v. Vokolek* (Mo. App. 1977), 546 S.W.2d 521; *LaGrenade v. Gordon* (1980), 46 N.C. App. 329, 264 S.E.2d 757; *Plante v. Engel* (1983), 124 N.H. 213, 469 A.2d 1299; *Lisker v. City of New York* (1972), 72 Misc. 2d 85, 338 N.Y.S.2d 359; *McBride v. Magnuson* (1978), 282 Or. 433, 578 P.2d 1259; *Bartanus v. Lis* (1984), 322 Pa. 48, 480 A.2d 1178.) Commentators view this tort action as a method of stemming the tide of parental child abduction. Note, *The Tort of Custodial Interference*, 1983 U. Ill. L. F. 229.

The instant case is distinguishable from the above cases which deal with child abduction by a noncustodial parent, alone or in concert with others. The cases also address interference with the custodial parent's visitation rights. We note that in the instant situation none of the defendants were in any way related to or acting for a noncustodial parent. However, similar factors apply.

In Illinois, the abduction of a child is a felony. (Ill. Rev. Stat. 1985, ch. 38, par. 10—5.) Aiding and abetting a child abduction is also a felony. (Ill. Rev. Stat. 1985, ch. 38, par. 10—6 (effective September 3, 1985).) The legislature has addressed this area in terms of criminal sanctions, but not in terms of civil penalties. As is shown by the detail of the criminal statute, the area of custodial interference involves a myriad of considerations and imposes a large possibility of multiplication of lawsuits. For these reasons, the area of civil sanctions for interference with a custodial parent's custody of a minor child is better addressed by the legislature. Plaintiff's complaint, which was based upon allegation of this tortious act, therefore failed to state a cause of action.

For the above reasons, we affirm the trial court.

Affirmed.

WEBBER and GREEN, JJ., concur.