Richard R. KUNZ, Plaintiff,

v.

Joel DEITCH and June Deitch, Defendants.

No. 86 C 9563.

United States District Court, N.D. Illinois, E.D.

May 5, 1987.

Kevin M. Kane, Brigham and Kane, Waukegan, Ill., for plaintiff.

Henry A. Hauser, Scott V. Peters, Hauser and Peters, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This order concerns defendants' motion to dismiss both counts of plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated herein, defendants' motion is denied. The plaintiff is a resident of the State of Maryland and the defendants are residents of the State of Illinois. The matter in controversy is alleged to be in excess of $10,000. Thus, jurisdiction to hear this case is based on 28 U.S.C. 1332.

Two issues are presented by defendants' motion to dismiss: (1) whether Illinois recognizes an independent cause of action for a parent's loss of a minor child's society and companionship; and (2) whether the alleged acts of the defendants are sufficient to state a claim under Illinois law for intentional infliction of emotional distress.

As with any motion to dismiss, this court is required to accept all allegations in the complaint as true. A motion to dismiss may only be granted when relief would not be available under any set of facts that could be proved consistent with the allegations in the complaint. *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). This court will first review the facts asserted in the complaint and then address defendants' arguments in turn.

### I. FACTS

According to the complaint, plaintiff Richard R. Kunz (Kunz) is the father of, and Lisa Deitch (Lisa), deceased, was the mother of Elizabeth Ann Kunz (Elizabeth) who was born on November 21, 1984 in Baltimore, Maryland. Defendants Joel and June Deitch (Deitches) are the parents of Lisa and the maternal grandparents of Elizabeth. Elizabeth lived with Kunz and Lisa from her birth until February 1985, when Lisa developed a fatal heart disease and was hospitalized in Laurel, Maryland. After Lisa's hospitalization, Elizabeth first lived with Kunz and his mother in Severn, Maryland. A few weeks later, Kunz and Lisa agreed to have Elizabeth reside with the Deitches at their home in Deerfield, Illinois. Lisa was then transferred to Loyola Medical Center near Chicago where she was hospitalized much of the time between March 1985 and her death on June 21, 1985. Prior to her death, Lisa executed a will designating Kunz as the guardian of Elizabeth.

After Lisa's death, the Deitches retained an attorney and began to look for persons to adopt Elizabeth. Richard and Karen Ferdman contacted the Deitches and expressed interest in adopting Elizabeth. The Deitches represented to the Ferdmans that the child's father had no involvement with Elizabeth since her birth and that his whereabouts were unknown. The Deitches asked the Ferdmans to pay them $5,000 to help defray medical expenses.

On July 18, 1985, the Ferdmans filed an adoption petition in the Circuit Court of Lake County, Illinois seeking to terminate

Kunz's parental rights. The petition alleged that the father's whereabouts were unknown and that he had no contact with Elizabeth from birth. At that time, the Deitches were aware of Kunz's phone number and knew that Kunz was interested in the child but deliberately misled the Ferdmans to induce them to proceed with the adoption. On June 20, 1985 and July 14, 1985, Kunz contacted the Deitches about Elizabeth, but the Deitches refused to allow Kunz access to Elizabeth. The Deitches told Kunz to speak with their attorney who in turn informed Kunz he could not see Elizabeth. Kunz then came to Illinois and made several attempts to contact Elizabeth through the Deitches without avail.

On August 18, 1985, Kunz filed a complaint for custody and was granted a temporary custody of Elizabeth by the Circuit Court for the City of Baltimore. When Kunz learned of the Ferdmans' petition in Lake County, he retained an attorney in Illinois and contested the adoption. After a hearing on January 24, 1986, the Ferdmans' petition was denied and custody of Elizabeth was awarded to Kunz. Thereafter, Kunz filed a two-count complaint claiming damages for intentional interference with his parental right to Elizabeth's society and intentional infliction of emotional distress. The Deitches responded by filing the instant motion to dismiss on the grounds that no cause of action for loss of a child's society exists in Illinois and that the facts alleged in the complaint are insufficient to sustain a claim for intentional infliction of emotional distress.

## II. DISCUSSION

### A. Choice of Law

As an initial observation, this court notes that questions raised by Kunz's motion requires an application of Illinois choice of law principles. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (when jurisdiction is premised on diversity, the choice of law rules of the state in which the federal court is located will control). Both counts of Kunz's complaint sound in tort. The choice of law rule principle applied to

tort claims in Illinois is the most significant contacts rule is outlined in section 145 of the Restatement (Second) of Conflict of Laws (1971). The Restatement lists the following contacts which are to be considered according to their importance and relevance to the issue at dispute:

(A) the place where the injury occurred,

(B) the place where the conduct causing the injury occurred,

(C) the domicile, residence, nationality and place of business of the parties,

(D) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).

The instant case presents the question of whether Illinois or Maryland law will apply to analyze the claims of interference with a parent's right to a child's society, and intentional infliction of emotional harm. The facts situated in the complaint show that the following contacts exist with Illinois: (1) the actions complained of occurred in Illinois, (2) the defendants reside in Illinois, (3) Elizabeth was domiciled in Illinois at the time the alleged causes of action accrued, and (4) the relationship between the parties was centered in Illinois. On the other side of the equation, the plaintiff is a Maryland resident. Due to the nature of the claims asserted, it is somewhat unclear where the injury occurred. Given Kunz's residence, this court presumes that the injury occurred in Maryland where Kunz spent most of his time.

Examining the foregoing contacts in light of their importance and relevance to issues in the dispute, both parties argue that Illinois has greater and more significant contacts than Maryland. This court agrees. Although Maryland has a legitimate interest in protecting the parental rights of its residents, Illinois has a strong interest in selecting the means of controlling conduct within its borders which may result in custodial interference. The fact that all the conduct complained of occurred in Illinois thus weighs heavily in favor of applying Illinois law. Although the question is much closer than both parties contend, this court believes Illinois has the

most significant relationship to the issues at dispute and will therefore apply the law of Illinois to test the claims stated in the complaint.

### B. Loss of a Child's Society in Illinois

■ When a federal district court sitting in diversity is required to decide an issue of state law, the court is bound by the decisions of the state supreme court. *Erie R.R. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not spoken, the federal district court is required to predict how the state supreme court would decide the issue, giving proper deference to relevant rulings of intermediate state courts. *Piatchek v. Fairview Reliable Loan, Inc.,* 474 F.Supp. 622, 625 (N.D.Ill.1979). In the present case, the Illinois Supreme Court has not specifically addressed whether an independent cause of action exists for loss of a child's society. However, a review of Illinois appellate decisions on this issue reveals a conflict between the First and Fourth Appellate Districts. *See Dralle v. Ruder,* 148 Ill.App.3d 961, 102 Ill.Dec. 621, 500 N.E.2d 514 (1st Dist.1986); *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1st Dist.1984); *Whitehorse v. Critchfield,* 144 Ill.App.3d 192, 98 Ill.Dec. 621, 494 N.E.2d 743 (4th Dist. 1986).

In a series of two holdings, the First District took the position that Illinois recognizes an independent tort claim for a parent's loss of a child's society. *Dralle,* 102 Ill.Dec. at 623, 500 N.E.2d at 516; *Dymek,* 83 Ill.Dec. at 59, 469 N.E.2d at 666. The conclusion such a cause of action exists in Illinois stemmed from the Illinois Supreme Court decision in *Bullard v. Barnes,* 102 Ill.2d 505, 82 Ill.Dec. 448, 468 N.E.2d 1228 (1984). In that case, the Illinois Supreme Court interpreted the pecuniary injury language of the Illinois Wrongful Death Act (Act) to include damages for a parent's loss of a child's society. *Bullard,* 82 Ill.Dec. at 453, 468 N.E.2d at 1233. In reaching this conclusion, the court noted that its prior decisions had recognized recovery under the Act in cases involving loss of a parent and spouse. *Id.* Finding an anomalous situation would result if par-

ents were now denied the same form of recovery for the death of a child, the court rejected the defendants' argument that recognition of such recovery should only be made by the legislature. *Id.* Thus, the *Bullard* court concluded that the intangible benefits children provide in the form of comfort, counsel, and society entitled parents to a presumption of pecuniary injury whenever the wrongful death of a child occurred. *Id.* 82 Ill.Dec. at 454, 468 N.E.2d at 1234.

In *Dymek v. Nyquist,* the First District, relying heavily on *Bullard,* reached the conclusion that an independent tort claim for loss of a child's society exists in Illinois. In *Dymek,* a divorced father who had custody of his 9-year-old son, instituted action alleging his former wife and a psychiatrist conspired to brainwash the child against him and thus destroy the society and companionship he enjoyed with his son. *Dymek,* 83 Ill.Dec. at 54, 469 N.E.2d at 661. Reviewing the *Bullard* holding, the court observed that the supreme court had reversed a longstanding trend of Illinois decisions rejecting any recovery for parental loss of a minor child's society and companionship. *Id.* Although recognizing *Bullard* involved the fatality of a child, the court placed great emphasis on the supreme court's conclusion that "parents are entitled to a presumption of pecuniary injury in the loss of a child's society. . . ." *Dymek,* 83 Ill.Dec. at 59, 469 N.E.2d at 666, citing *Bullard,* 82 Ill.Dec. at 454, 468 N.E.2d at 1234. In light of the reasoning in *Bullard,* the court ruled that the father stated a cause of action for parental loss of a minor child's society and companionship. *Dymek,* 83 Ill.Dec. at 59, 469 N.E.2d at 666.

Recently, the First District reaffirmed the view that a cause of action for loss of a child's society exists in Illinois. *Dralle v. Roder,* 148 Ill.App.3d 961, 102 Ill.Dec. 621, 500 N.E.2d 514 (1st Dist.1986). In *Dralle,* the parents of a child born with deformities allegedly linked to the mother's ingestion of a prescription drug brought a product liability and negligence action against pharmaceutical companies for loss of the child's society. Opposing the parents' claim, the

defendants argued that recognition of such a cause of action was against the weight of authority and a decision better left to the legislature. *Id.* 102 Ill.Dec. at 622, 500 N.E.2d at 515. The defendants suggested that *Dymek* was improperly decided and should not be followed. Rejecting these arguments, the court noted that while such a claim may not be cognizable in many states, several jurisdictions recently addressing whether loss of a child's society should be actionable have decided to recognize the cause of action. *Id.* 102 Ill.Dec. at 623, 500 N.E.2d at 516. The court then reviewed the *Bullard* decision and determined that the conclusion reached in *Dymek* was well founded. Accordingly, the court sustained the claim for loss of a child's society and companionship. *Id.*

An opposite conclusion on the issue of loss of a child's society was reached by the Fourth District in *Whitehorse v. Critchfield,* 144 Ill.App.3d 192, 98 Ill.Dec. 621, 494 N.E.2d 743 (4th Dist.1986). In that case, the custodial father of a 17–year–old daughter sued two school teachers for allegedly attempting to convert the child to their religion and counseling and inducing her to abandon her father's home. *Whitehorse,* 98 Ill.Dec. at 621–22, 494 N.E.2d at 743–44. The court acknowledged the existence of Section 700 of the Restatement (Second) of Torts which recognizes parental loss of society when a party compels or induces a minor to leave a parent entitled to custody. *Id.* 98 Ill.Dec. at 622, 494 N.E.2d at 744. However, the court declined to adopt the restatement's view, believing the determination of whether such a claim should exist in Illinois was a proper subject for legislative resolution. *Id.* 98 Ill.Dec. at 622–23, 494 N.E.2d at 744–45. Noting that Illinois General Assembly has addressed the abduction of a child in a criminal context but not in terms of civil penalties, the court felt constrained to deny the father's claim for loss of society until the legislature firmly established such an action. *Id.* 98 Ill.Dec at 623, 494 N.E.2d at 745.

Analyzing the foregoing decisions, this court is inclined to believe the Illinois Supreme Court would adopt the position taken by the First District. The premise of the Fourth District's holding in *Whitehorse* was that recognition of a claim for parental loss of a child's society was a decision for the legislature. In *Bullard,* the Illinois Supreme Court, reversing a decision by the Fourth District, determined that parents could recover for loss of a child's society under the Wrongful Death Act. In doing so, the court specifically addressed and rejected the contention that recognition of such recovery was solely within the power of the legislature. The failure of the *Whitehorse* court to address either *Bullard* or *Dymek* undercuts the persuasiveness of its rationale for denying the claim. In light of the rulings in *Bullard, Dymek,* and *Dralle,* this court believes that, if faced with the question, the Illinois Supreme Court would acknowledge the existence of an independent action for parental loss of a child's society. Because of the similarities between the facts in this case and those in *Dymek,* Deitches' motion to dismiss Kunz's claim for loss of his child's society must be denied.

### C. Intentional Infliction of Emotional Distress

■ No question exists that Illinois recognizes the tort of intentional infliction of emotional distress. *See Public Finance Corp. v. Davis,* 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). The issue presented by Deitches' motion to dismiss is whether the facts alleged by Kunz are sufficient to sustain a claim for intentional infliction of emotional distress. The elements required to plead this tort in Illinois are as follows: (1) defendant's conduct must be extreme and outrageous; (2) emotional distress suffered by the plaintiff must be severe; and (3) defendant's conduct must be such that defendant knew severe emotional distress would be substantially certain to result. *Public Finance Corp. v. Davis,* 4 Ill.Dec. at 654, 360 N.E.2d at 767.

Relating the facts asserted in the present case to the requirements set forth above, this court is unable to grant Deitches' motion to dismiss. Kunz alleges that the Deitches intentionally refused him access to and custody of his infant daughter, Eliz-

abeth, for a seven-month period following the death of the child's mother in June 1985. Despite his numerous attempts to see the child and the Deitches' knowledge that their daughter's will designated Kunz as the child's guardian, the Deitches refused Kunz any contact with Elizabeth. Instead, the Deitches instituted an industrious effort to permanently separate Kunz from his daughter by seeking married couples interested in adopting Elizabeth. Once locating such a couple, the Deitches fraudulently informed them Kunz had no contact with the child since birth and his whereabouts were unknown. Based on these misrepresentations the couple was fraudulently induced to file a petition to adopt Elizabeth. Meanwhile, Kunz obtained an order from a Maryland court granting him temporary custody of Elizabeth on August 18, 1985. The Deitches, however, refused to honor that order. Not until Kunz was forced to hire an attorney in Illinois to contest the adoption petition and an order by a Lake County court issued awarding custody of Elizabeth to her father, did the Deitches relinquish custody of the child to Kunz. As a direct consequence of Deitches' actions, Kunz suffered severe emotional distress by virtue of his involuntary separation from Elizabeth.

This court is of the opinion that the foregoing facts indicate a pattern of conduct which is so outrageous in character, and extreme in degree that it transcends all possible bounds of decency and arises to the type of activity which is actionable under Illinois law. Although Deitches point out that a similar claim for damages was rejected in *Dymek*, this court believes the facts alleged by Kunz reveal a much more extreme course of conduct. In *Dymek*, the court dismissed a claim for intentional infliction of emotional distress against a psychiatrist which had been brought by a custodial parent for the psychiatrist's unauthorized treatment of his child. *Dymek v. Nyquist*, 83 Ill.Dec. at 57, 469 N.E.2d at 664. Noting that the child's noncustodial parent had requested psychiatric care and the fact that the custodial parent did not contend the treatment was unnecessary or harmful, the court ruled that the psychia-

trist's conduct could not be characterized outrageous as a matter of law. *Id.* 83 Ill.Dec. at 57–58, 469 N.E.2d at 664–65. Here, the Deitches' alleged actions were aimed at permanently depriving Kunz of all contact with his infant daughter. This case does not involve a simple custody battle between two parents, but a malicious attempt by third parties to separate an infant from her only surviving parent. As such, *Dymek* is clearly distinguishable.

Deitches next assert that any emotional distress suffered by Kunz was not of the level of severity required to state a claim for recovery. In recognizing the existence of the tort of intentional infliction of emotional distress, the Illinois Supreme Court cautioned that "although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Public Finance Corp.*, 4 Ill.Dec. at 654, 360 N.E.2d at 767. The court noted that the distress inflicted must be of a nature "so severe that no reasonable man could be expected to endure it." *Id., quoting* Restatement (Second) of Torts, § 46, comment j (1965). In ascertaining whether such severity could legally exist, the court adopted the test set forth in the Restatement (Second) of Torts which focuses on the intensity and duration of the distress alleged. *Id., quoting* Restatement (Second) of Torts, § 46 comment j (1965). (The intensity and the duration of the distress are factors to be considered in determining severity.)

As noted above, Kunz was allegedly deprived of all contact with his infant daughter for a period of seven months. In *Sheltra v. Smith*, the Supreme Court of Vermont ruled that a custodial father's refusal to allow his ex-wife any contact or communication with their daughter for a period of one month was sufficient to state a prima facie case of intentional infliction of emotional distress. *Shetra v. Smith*, 136 Vt. 472, 392 A.2d 431, 433 (1978). In reaching this conclusion, the Vermont court specifically found the mother's allegation of extreme emotional distress resulting from deprivation of contact to be sufficient

under the standards stated for intentional infliction of emotional distress in Section 46 of the Restatement (Second) of Torts. *Id.* The Vermont court's ruling indicates that the severity of distress normally suffered when a parent is deprived of all contact with a minor child meets the intensity requirement of the Restatement's two-part analysis. The court ostensibly believed the durational aspect of the analysis was satisfied by the alleged one-month period of separation. If the intensity and duration of distress caused by a month of separation was sufficient to state a prima facie case in *Sheltra*, little doubt exists that the severity of distress allegedly caused by seven months of separation is adequate to sustain Kunz's claim.

Finally, no argument is made that Kunz's allegations fail to meet the third requirement stated in *Public Finance Corp.* The Deitches' conduct was such that they knew severe emotional distress to Kunz was substantially certain to occur as a direct result of their actions. As each of the elements required to plead a prima facie case of intentional infliction of emotional distress is contained in the complaint, Deitches' motion to dismiss Count II must be denied.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss both counts of plaintiff's complaint is denied.

IT IS SO ORDERED.