2024 IL App (1st) 221521

SIXTH DIVISION
June 28, 2024

No. 1-22-1521

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| VIERA HULSH, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 20 CH 00831 |
| | ) | |
| MAYA HULSH and OREN HULSH, | ) | The Honorable |
| | ) | Patrick J. Sherlock, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justice C.A. Walker concurred in the judgment and opinion.
Presiding Justice Oden Johnson dissented, with opinion.

**OPINION**

¶ 1   We are called on to recognize a new tort for interference with custodial rights in the context of international child abduction, an issue within the purview of a treaty commonly known as the Hague Convention, to which the United States is a party. Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, https://treaties.un.org/doc/Publication/UNTS/Volume%201343/volume-1343-I-22514-English.pdf [https://perma.cc/P8PV-AHD6]) (hereinafter Hague Convention). Here, the father abducted his two children, who were living with their mother in Slovakia pursuant to a court order granting her primary custody, and brought them to the United States. The father's mother and

brother allegedly assisted him by paying for a charter plane to take the father and children from Slovakia to England, providing housing for them in the United States, paying their living expenses after they came to the Chicago area, and otherwise secreting the whereabouts of the children from their mother. Following a trial on a claim brought by the mother against the father under the Hague Convention in federal district court, the father was ordered to return the children to the mother, and the mother was awarded the attorney fees and costs she incurred to get the children back. After the father filed for bankruptcy protection and claimed indigency, the mother sued the father's mother and brother in the circuit court for tortious interference with custodial rights, among other claims. The circuit court dismissed the complaint, and the mother appeals. We decline to recognize a new cause of action for tortious interference with custodial rights. Illinois reviewing courts have repeatedly declined to recognize such a claim. Moreover, it is the prerogative of our supreme court or the legislature to create new causes of action, not this court. Finally, and in any case, public policy does not support a new cause of action here where the mother could have obtained the relief she seeks against her former husband's mother and brother in federal court in the underlying Hague Convention proceedings. Accordingly, we affirm the dismissal of the plaintiff's claims.

¶ 2                                    I. BACKGROUND

¶ 3     Jeremy Hulsh, a citizen of the United States and Israel, and Viera Hulsh, a citizen of Slovakia, divorced in 2019. Viera was granted primary custody of their two children, who resided with her in Slovakia. Jeremy was granted visitation rights. In October 2019, Jeremy removed the children from Slovakia without Viera's permission and brought them to Chicago, Illinois.

¶ 4     On November 5, 2019, Viera filed a petition in the United States District Court for the Northern District of Illinois against Jeremy, seeking the return of the children under the Hague

Convention (*id.*) and its implementing legislation, the International Child Abduction Remedies Act (ICARA) (22 U.S.C. § 9001 *et seq.* (2018)). The case was tried in February 2020. On July 21, 2020, the district court granted Viera's petition and ordered that the children be returned to her in Slovakia.

¶ 5   On August 11, 2020, Viera filed a petition in district court, requesting "attorneys' fees, expenses and costs incurred pursuing her successful action for return of her children" as authorized by ICARA. Several weeks later, Jeremy filed a petition for bankruptcy. On January 23, 2021, Viera amended her fee petition and requested almost $500,000 in fees, expenses, and taxable costs.

¶ 6   On March 15, 2021, the district court partially granted Viera's request and ordered Jeremy to pay her $265,096.87 for the attorney fees and expenses she incurred in getting the children back. The court excluded fees it found duplicative or unreasonable and those that were unsupported by documentation or unrecoverable under the statute, and it factored in Jeremy's claimed indigency. The bankruptcy court found that the attorney fees awarded to Viera were "nondischargeable" because fees awarded under ICARA constitute domestic support obligations under the Bankruptcy Code (11 U.S.C. § 101 *et seq.* (2018)).

¶ 7   Unable to collect on the money judgment against Jeremy, Viera filed a separate lawsuit in the circuit court of Cook County against Jeremy's mother, Maya Hulsh, and Jeremy's brother, Oren Hulsh. In her complaint, Viera alleged three counts: (1) tortious interference with custodial rights, (2) aiding and abetting tortious interference with custodial rights, and (3) intentional infliction of emotional distress. She asserted that (1) Maya and Oren "knowingly interfered with [her] custodial rights by directly participating in abducting [her] children for the intended purpose of violating [her] custodial rights"; (2) Maya and Oren "reached an agreement with Jeremy to engage in an unlawful scheme of abducting [her] children in knowing violation of custody orders,

the Hague Convention, [and] ICARA"; and (3) Maya and Oren's "overt acts were done pursuant to and in furtherance of the common scheme to abduct [her] children." In support, Viera alleged that, after Jeremy took her children from Slovakia in 2019, he chartered a private aircraft paid for by Maya to fly the children to England and then traveled with them to Canada, where he rented a car paid for by Oren to travel to the United States. Viera alleged that, after Jeremy arrived in the Chicago area with his children, they stayed in a home "rented or owned" by Maya and that Maya helped care for the children and "helped finance the children's concealment and care." Viera alleged that Oren helped "harbor and care for the children," both at his mother's home and at his condominium in Chicago, and that he and Maya failed to provide her with information about her children's whereabouts.

¶ 8 Viera alleged that she suffered "significant financial damages" as a result of Maya and Oren's "interference with her custody rights," including (1) attorney fees and expenses related to the district court case she had previously litigated against Jeremy; (2) prior and future attorney fees and expenses in the bankruptcy case she was litigating against Jeremy; and (3) past and possible future lost income, transportation, and living expenses arising from Maya and Oren, "acting in concert with Jeremy," which "forc[ed] [her] to suspend her employment temporarily in Slovakia to come to the United States for extended periods to successfully reobtain custody of her children, litigate the bankruptcy case, litigate this case, and take other actions necessary to collect her district court award."

¶ 9 Oren and Maya filed section 2-615 (735 ILCS 5/2-615 (West 2020)) motions to dismiss Viera's complaint, asserting that "the causes of action she asserts ***do not exist under Illinois law." Relying on *Whitehorse v. Critchfield*, 144 Ill. App. 3d 192 (1986), the trial court dismissed count I of Viera's complaint because there is no recognized cause of action for tortious interference

4

with custodial rights in Illinois. The trial court dismissed count II for conspiracy as well because it hinged on the viability of the tortious interference count. However, it declined to dismiss count III for intentional infliction of emotional distress. After the court denied Maya and Oren's motion to reconsider, Viera filed a motion for an Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019) certification and to stay the proceeding pending the disposition of her proposed Rule 308 petition. The court denied Viera's Rule 308 petition. Viera then voluntarily dismissed her intentional infliction of emotional distress claim and timely appealed the trial court's decision to dismiss the tortious interference with custodial rights and conspiracy claims.

¶ 10                                    II. ANALYSIS

¶ 11                                A. Standard of Review

¶ 12     A motion to dismiss pursuant to section 2-615 of the Civil Practice Law (735 ILCS 5/2-615 (West 2020)) attacks the legal sufficiency of the complaint. *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 14. In order to state a cause of action, a complaint must set forth a legally recognized cause of action and plead facts to bring the claim within that cause of action. *Misselhorn v. Doyle*, 257 Ill. App. 3d 983, 985 (1994). "The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). A cause of action should be dismissed when it "clearly appears that no set of facts can be proved which will entitle the plaintiff to recover." *Id.* We review a trial court's decision to grant a section 2-615 motion to dismiss *de novo*. *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 14.

¶ 13        B. Tortious Interference with Custodial Rights Is Not a Legally Recognized

Cause of Action in Illinois

¶ 14    On appeal, Viera argues that the trial court erred when it dismissed her tortious interference with custodial rights claim. Although she acknowledges that Illinois courts have refused to recognize a cause of action for damage to the parent-child relationship, she contends that our supreme court has "not ruled on the claim [she] makes in this case," because she seeks only the expenses she incurred in reobtaining custody of her children, not damages arising from damage to the parent-child relationship.

¶ 15    However, Illinois courts have declined to recognize tortious interference with custodial rights as a cause of action regardless of the damages claimed. In *Whitehorse*, 144 Ill. App. 3d at 193, the Murphys removed a child from her father's custody in Utah and sent her to live with the Critchfields in Illinois, who counseled the child not to return home or reveal her location to her father. After the child was eventually returned to her father, he brought suit against the Murphys, alleging that they deprived him of the care, custody, and services of his daughter, and against the Critchfields, alleging that they aided and abetted the Murphys in carrying out their plan. *Id.* He asked for his expenses and costs, as well as damages for the emotional distress he suffered. *Id.* The Murphys moved to dismiss, alleging that "tortious interference with the custodial parent's relations with his child is neither statutorily nor judicially recognized as an action in Illinois." *Id.* After the trial court granted the motion to dismiss, the father appealed and "urge[d] this court to recognize a cause of action based upon a tortious interference with a custodial parent's right to custody, care, and companionship of his child." *Id.* at 194. This court "decline[d] to do so, feeling this area, because of its multiple ramifications and potential for abuse, is more properly a subject for the legislature's consideration." *Id.*

¶ 16    Our supreme court has repeatedly declined to recognize such a tort either. See, *e.g.*, *Dralle v. Ruder*, 124 Ill. 2d 61, 70 (1988) (declining to allow recovery for loss of society stemming from

a child's nonfatal injuries allegedly caused by the mother's use of a prescription medication, reasoning that creating such a tort "would threaten a considerable enlargement of liability," it was difficult to assess damages, and a tort remedy was available to the child); *Vitro v. Mihelcic*, 209 Ill. 2d 76, 88 (2004) (finding no valid cause of action when the parents of a child who suffered brain damage sought recovery for loss of society and companionship, stating that it is "the legislature which should decide whether this new cause of action should be created"); *Doe v. McKay*, 183 Ill. 2d 272, 286 (1998) (finding that "the same considerations that led the court to deny recovery in *Dralle* must also preclude recovery for lost society and companionship" when there was direct interference with the parent-child relationship because "the considerations cited in *Dralle* as grounds for barring recovery of psychic damages are applicable whether the interference with the relationship is characterized as direct or indirect").

¶ 17 Viera relies on *Dymek v. Nyquist*, 128 Ill. App. 3d 859, 866 (1984), where the court determined that a cause of action for the loss of a minor child's society and companionship could be maintained by a parent in Illinois, and *Kunz v. Deitch*, 660 F. Supp. 679, 682-83 (N.D. Ill. 1987), where the federal court noted that our supreme court "ha[d] not specifically addressed whether an independent cause of action exists for loss of a child's society" but predicted that our supreme court would recognize such a tort. However, *Dymek* and *Kunz* predate our supreme court's decisions in *Dralle*, *Vitro*, and *Doe*, where the court repeatedly declined to recognize a cause of action based on interference with the parent-child relationship, finding that it was "the legislature which should decide whether this new cause of action should be created." *Vitro*, 209 Ill. 2d at 88.

¶ 18 Viera highlights the fact that a number of other states have recognized the tort of intentional interference with custodial rights. See, *e.g.*, *Kajtazi v. Kajtazi*, 488 F. Supp. 15, 18 (E.D.N.Y. 1978) (recognizing "[t]he unlawful taking or withholding of a minor child from the custody of the parent

7

entitled to such custody [a]s a tort"); *Kramer v. Leineweber*, 642 S.W.2d 364, 366 (Mo. Ct. App. 1982) ("A tort action against one who deprives a parent of a child has long been recognized in Missouri and other jurisdictions."); *Lloyd v. Loeffler*, 694 F.2d 489, 496 (7th Cir. 1982) (finding that Wisconsin law would recognize an action in tort for unlawful intentional interference with the custody rights of a parent). However, this does not change the fact that, in Illinois, reviewing courts have repeatedly declined to recognize a cause of action for interference with the parent-child relationship.

¶ 19    Moreover, as an intermediate appellate court, it is not our prerogative to create a new cause of action. When a statutory cause of action does not exist in Illinois, this court has repeatedly declined to recognize a new one, finding the matter better left to our legislature or our supreme court. See, *e.g.*, *Emery v. Northeast Illinois Regional Commuter R.R. Corp.*, 377 Ill. App. 3d 1013, 1030 (2007) ("[B]ecause we believe that it is the province of either the legislature or the supreme court to create new causes of action [citation], we continue to follow the rationale of the Second and Fifth Districts of the Appellate Court, and do not recognize the tort of compelled self-defamation. As such, we find that the trial court did not err in granting defendant's section 2-615 motion to dismiss on this claim."); *Harrel v. Dillards Department Stores, Inc.*, 268 Ill. App. 3d 537, 548 (1994) ("Appellate courts should not create new causes of action. Our supreme court and legislature are capable of and primarily responsible for deciding the need for new causes of action."); *Wofford v. Tracy*, 2015 IL App (2d) 141220, ¶ 41 ("We also note that it is the province of our supreme court and/or the General Assembly, not the appellate court, to create new causes of action."). Because our supreme court has repeatedly declined to recognize a claim for tortious interference with custodial rights, we decline to create a new cause of action here. We find it is best left to our supreme court or the legislature.

¶ 20          C. The Supreme Court and Legislature's Prerogative Aside, Public Policy Does

Not Warrant Recognition of a Claim for Tortious Interference With Custodial

Rights in This Case

¶ 21     Viera argues that we should recognize a new cause of action as a matter of public policy because, if we fail to extend the law here, Maya and Oren and other individuals "who offer[ ] substantial assistance" with child abduction will be able to completely escape liability. However, Viera could have brought suit against Maya and Oren in connection with her Hague Convention claim in federal district court. Therefore, her public policy argument must fail.

¶ 22     The Hague Convention is an international treaty "cent[e]red upon the idea of co-operation amongst authorities" (Elisa Pérez-Vera, Explanatory Report, 3 Acts and Documents of the Fourteenth Session, Hague Conference on Private International Law, Child Abduction 426, 435 (1982), https://assets.hcch.net/docs/05998e0c-af56-4977-839a-e7db3f0ea6a9.pdf [https://perma.cc/UZ4T-3UDX] (hereinafter Pérez-Vera Report), which seeks to " 'protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence.' " *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001) (quoting Hague Convention pmbl., T.I.A.S. No. 11670, 1343 U.N.T.S. at 98). The Hague Convention and its enabling legislation, ICARA, allow attorney fees and costs to be awarded in order to "restore the applicant to the financial position he or she would have been in had there been no removal or retention" and "to deter such conduct from happening in the first place." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494-10,502, 10,511 (Dep't of State Mar. 26, 1986) (public notice). Although Viera's counsel contended at argument that he did not believe Viera could have filed suit against Oren and Maya in federal district court, nothing in the Hague Convention precludes a plaintiff from filing

suit against multiple respondents or nonfamily members. While the Hague Convention contains no express provision defining who may be a potential abductor, Elisa Pérez-Vera, the official Hague Conference reporter for the Convention, issued an explanatory report, which "is recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,503 (Dep't of State Mar. 26, 1986) (public notice). In her report, Pérez-Vera notes that the Hague Convention adopts a "wide view" of who can be considered a "potential abductor" and characterizes as wrongful removals those carried out, not just by parents, but also by "a grandfather or adoptive father" for example. Pérez-Vera Report, *supra*, at 451. Although we have found no cases in Illinois addressing this issue, courts around the country have allowed suits against nonparent respondents and have held that individuals who assist with wrongful removals can be held financially liable.

¶ 23   For example, in *Neves v. Neves*, 637 F. Supp. 2d 322, 346 (W.D.N.C. 2009), the court held that a mother was entitled to recover attorney fees and expenses from a couple who helped her estranged husband wrongfully remove her children. The mother brought suit under the Hague Convention against her estranged husband and an unrelated couple, the Patels, seeking the return of her children to Germany. *Id.* at 329. She alleged that her estranged husband wrongfully removed their two children from Germany and that the Patels assisted her husband in wrongfully removing the children and by allowing the children to reside in their home in the United States. *Id.* at 329-30. The court found that the husband "received substantial assistance from" the Patels because the Patels knew the husband wanted to take his children from Germany without the mother's knowledge, made the travel arrangements, paid for the airline tickets, allowed the husband and children to reside in their home, and ignored the mother's multiple attempts to contact them about

the children's whereabouts. *Id.* at 335. Based upon this evidence, the court "f[ound] as fact and conclude[d] as a matter of law that the Patels actively and knowingly assisted [the estranged husband] in the wrongful removal and retention of the children, in violation of the [mother's] rights of custody." *Id.* at 335-36. The court ordered the Patels to pay fees and costs to the mother, finding that, "without their assistance, [the husband] would not have been able to carry out his plan to wrongfully remove the children from Germany without the [mother's] knowledge or consent." *Id.* at 346.

¶ 24     In *Litowchak v. Litowchak*, No. 2:15-cv-185, 2015 WL 7428573 (D. Vt. Nov. 20, 2015), the petitioner brought claims under the Hague Convention against the respondent, alleging that she abducted their children by moving them from Australia to the United States without his consent. He then asked the court to allow him to amend his petition to add the respondent's father as an additional respondent. *Id.* at *1. He claimed that the respondent's father "purchased plane tickets for [r]espondent and the children to leave Australia," "arranged and provided housing for [r]espondent and the children after they left Australia, and *** concealed the children's location" from him. *Id.* The court noted that "[t]he Hague Convention and ICARA provide remedies beyond orders requiring the return of a child" and that the Hague Convention "does not limit responsibility 'for the removal or retention of a child' to 'acts exclusively [done by] one of the parents … [but instead] hold[s] a wide view which would, for example, allow removals by a grandfather … to be characterized as child abduction, in accordance with the [Hague] Convention's use of that term.' " *Id.* at *2 (quoting Pérez-Vera Report, *supra*, at 451). The court found that, because the allegations in the petitioner's petition concerned the respondent's father's role in the removal of the children from Australia and his alleged concealment of the children from the petitioner, his actions were "clearly within the scope of actions addressed by the Hague Convention" and the court could

"redress those allegedly unlawful actions by granting appropriate remedies in addition to the return of the children to Australia." *Id.* The court further found that, "to the extent [respondent's father] committed the abduction of the children, he may be liable for [p]etitioner's expenses." *Id.* It therefore allowed the petitioner to amend his petition to add respondent's father as an additional respondent. *Id.* at \*3.

¶ 25    Other courts have allowed suits against nonparent respondents in Hague Convention proceedings as well. See, *e.g.*, *Jacquety v. Baptista*, No. 19 Civ. 9642, 2020 WL 5946562, at \*5 (S.D.N.Y. Oct. 7, 2020) ("As an initial matter, the Court is not persuaded that, because [the removing mother's boyfriend] is not a relative or a custodial parent, he is an improper respondent here. Under ICARA, responsibility for child abduction is nowhere limited to a child's parents or relatives."); *Rishmawy v. Vergara*, 540 F. Supp. 3d 1246, 1274-75 (S.D. Ga. 2021) (where a mother alleged that the child's father and his girlfriend took her minor child out of Honduras and wrongfully retained her, the court found that the girlfriend was subject to suit because she "played an integral role in the retention of the Child in the United States").

¶ 26    As the above cases illustrate, Viera could have brought suit against Maya and Oren under the Hague Convention and ICARA in the federal district court, seeking the same damages she now seeks. Although the dissent disagrees with our "conclusive determination that Viera could have sued and recovered against Oren and Maya under her ICARA case filed in 2019" (*infra* ¶ 37), it cites no authority to convince us otherwise. What's more, one of the allegations in Viera's complaint—that Maya and Oren "reached an agreement with Jeremy to engage in an unlawful scheme of abducting Viera's Children in knowing violation of \*\*\* the Hague Convention [and] ICARA"—seemingly concedes that she could have filed suit against Oren and Maya in federal court. Instead of doing so, however, Viera filed her suit under the Hague Convention solely against

Jeremy, and her petition was granted, her children were returned to her, and Jeremy was ordered to pay her more than $265,000 to compensate her for the economic damages she sustained in regaining custody of her children. It was only after Jeremy declared bankruptcy and was apparently unable to satisfy the judgment that Viera filed suit against Maya and Oren in the circuit court and asked the court to create a new cause of action so she could be compensated for the economic damages she had already been awarded by the district court. But because the Hague Convention and ICARA already provide Viera with a statutory remedy for the very damages she seeks, we see no public policy reason to recognize a new tort here. See, *e.g.*, *Berlin v. Nathan*, 64 Ill. App. 3d 940, 950-51 (1978) (So long as some remedy for the alleged wrong exists, article I, section 12, of the Illinois Constitution, which states that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, or property" (Ill. Const. 1970, art. I, § 12), does not mandate recognition of any new remedy. The failure to state a cause of action cannot be cured by alleging that the plaintiff should have a remedy as provided in article I, section 12.); *Neade v. Portes*, 193 Ill. 2d 433, 450 (2000) (refusing to recognize a new action for breach of fiduciary duty against a physician in a suit brought against the physician for medical negligence because the claim was "duplicative" and the injuries suffered by plaintiff as a result of the physician's medical care were "sufficiently addressed by application of traditional concepts of negligence").

¶ 27    D. The Conspiracy Count Also Fails Because It Was Premised on the Viability of the

Tortious Interference With Custodial Rights Claim

¶ 28    In her civil conspiracy count, titled "civil conspiracy to aid and abet tortious interference with custodial rights," Viera alleged that Maya and Oren "aid[ed] and abett[ed] Jeremy's abduction of Viera's children" and "reached an agreement with Jeremy to engage in an unlawful scheme of

13

abducting Viera's children." While civil conspiracy is recognized as a distinct cause of action in Illinois, " '[t]he gist of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement.' " *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶¶ 19-20 (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63 (1994)). Thus, if a plaintiff "fails to state an independent cause of action underlying its conspiracy allegations, the claim for conspiracy also fails." *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000); see *Süd Family Ltd. Partnership v. Otto Baum Co.*, 2024 IL App (4th) 220782, ¶ 60 (holding that plaintiffs failed to state a cause of action for fraud and therefore finding that "dismissal of its conspiracy counts—which [we]re based upon the same allegations of fraud—[wa]s also warranted"). Although Viera initially alleged intentional infliction of emotional distress in her complaint, she voluntarily dismissed that count, leaving only her tortious interference claim. But because no cause of action for tortious interference with custodial rights exists in Illinois, Viera's conspiracy count—which was premised solely on the viability of the tortious interference claim—necessarily fails as well.

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 31    Affirmed.

¶ 32    Presiding Justice Oden Johnson, dissenting:

¶ 33    I respectfully dissent from the majority's position that a petitioner who seeks to recover fees and costs from third parties who assist in the international abduction of children that are ultimately returned under the Hague Convention should not be able to recover under Illinois law. In doing so, I recognize that this case, like several before it, calls upon this court to recognize a cause of action for tortious interference with custodial rights, which this court has declined to do

on several occasions. However, I submit that we should not continue to allow such behavior to go unchecked and that public policy dictates that we recognize and allow this cause of action as a deterrent to such future behavior. Moreover, I disagree with the majority's conclusion that Viera could have sued Oren and Maya and recovered under ICARA at the time that her case was initially filed.

¶ 34    This case, as with all international child abduction cases, is governed by the Hague Convention. The Hague Convention, adopted in 1980, seeks to secure the prompt return of children wrongfully removed to or retained in any signatory state. *In re Marriage of Krol*, 2015 IL App (1st) 140976, ¶ 17. A central purpose of the Hague Convention is to " 'discourage parents from crossing international borders in search of a more sympathetic forum' " in which to litigate custody issues. *Id.* (quoting *In re Lozano*, 809 F. Supp. 2d 197, 217 (S.D.N.Y. 2011), *aff'd sub nom. Lozano v. Alvarez*, 697 F.3d 41 (2d Cir. 2012), *aff'd sub nom. Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014)). The United States is a signatory to the Hague Convention and has implemented its provisions through the International Child Abduction Remedies Act (ICARA) (originally codified at 42 U.S.C. § 11601 *et seq.* (2006), now codified at 22 U.S.C. § 9001 *et seq.* (2018)). The ICARA statute provides that

> "[a]ny person seeking to initiate judicial proceedings under the [Hague] Convention for the return of a child *** may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 22 U.S.C. § 9003(b) (2018).

The statute further states that the courts of the states and the United States have concurrent original jurisdiction of actions arising under the Hague Convention. *Id.* § 9003(a).

¶ 35    Article 26 of the Hague Convention provides, in pertinent part, as follows:

" 'Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.' " *Mendoza v. Silva*, 987 F. Supp. 2d 910, 913 (2014) (quoting Hague Convention, art. 26, T.I.A.S. No. 11670, 1343 U.N.T.S. 89).

¶ 36    The ICARA codifies the obligations of the United States under this section of the Hague Convention as follows:

"Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3) (2018).

¶ 37    Reading both the *Mendoza* court's interpretation and the plain language of ICARA together, it is clear that the recovery of fees and costs under the Hague Convention and ICARA are aimed at the respondent who removed or retained the child. Neither the plain language of article 26 of the Hague Convention nor ICARA state or imply otherwise. The majority relies primarily on secondary sources and four cases to support its conclusion. It is important to note that two of the four cases cited by the majority, *Jacquety v. Baptista*, No. 19 Civ. 9642, 2020 WL 5946562

16

(S.D.N.Y. Oct. 7, 2020), and *Rishmawy v. Vergara*, 540 F. Supp. 3d 1246, 1273 (S.D. Ga. 2021), were not decided until *after* Viera's Hague Convention case was filed in 2019.[1] In *Neves v. Neves*, 637 F. Supp. 2d 322, 346 (W.D.N.C. 2009), recovery of fees and costs was found to be appropriate against third-party respondents who allowed the respondent father and the children to live with them and did not disclose the children's whereabouts to the petitioner. However, the majority does not cite, nor have I found, any other case that predates the filing of Viera's case that allows for recovery of fees and costs against third parties/nonparents.[2] As such, I disagree with the majority's conclusive determination that Viera could have sued and recovered against Oren and Maya under her ICARA case filed in 2019.

¶ 38    It is also clear that the Restatement of Torts recognizes the tort of intentional interference with a parent's custodial rights, titled "Causing Minor Child to Leave or not to Return Home." See Restatement (Second) of Torts § 700 (1977). Comment g to that section allows the parent to recover for the loss of society of his child and for his emotional distress resulting from the abduction or enticement. Restatement (Second) of Torts § 700 cmt. g (1977). The parent is also allowed recovery for any reasonable expenses incurred in regaining custody of the child. *Id.* While some jurisdictions have adopted this cause of action in both federal and state actions, to date, Illinois has not formally adopted the Restatement for this tort, and it is clear that a restatement is not binding on Illinois courts unless it is adopted by our supreme court. See *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 990 (2011). However, despite there being no formal adoption of this tort under the Restatement, there is a conflict among districts of our appellate court, with the Fourth District rejecting the cause of action in *Whitehorse v. Critchfield*, 144 Ill. App. 3d 192 (1986), and

---

[1]Additionally, it should be noted that *Jacquety* and *Litowchak v. Litowchak*, no. 2:15-cv-185, 2015 WL 7428573 (Nov. 20, 2015) are unpublished slip opinions, which have no legal precedential value.

[2] While there are other cases where a third party has been sued for recovery of the abducted children, I have found no other cases that address financial recovery under ICARA against third parties.

the First District recognizing recovery in *Dymek v. Nyquist*, 128 Ill. App. 3d 859 (1984). Additionally, as noted above, the United States District Court for the Northern District of Illinois recognized the tort under Illinois law in *Kunz v. Deitch*, 660 F. Supp. 679, 680 (N.D. Ill. 1987). While the majority notes that those cases were all decided prior to *Dralle v. Ruder*, 124 Ill. 2d 61 (1988), it ignores the fact that our supreme court in *Dralle* explicitly stated that, at that time, it was *not* considering "the nature or extent of the recovery in cases based on what has been termed a 'direct interference' with the parent-child relationship." *Id.* at 72-73. A fair reading of that statement is that *Dralle*'s holding was limited to those circumstances where parents sought economic recovery for nonfatal injury to their children and that it left the door open for future consideration of this issue. And since *Dralle*, our supreme court has yet to conclusively decide whether or not Illinois recognizes the tort of intentional interference with a parent's custodial rights as codified in the Restatement of Torts.

¶ 39    Additionally, public policy dictates that Illinois should recognize tortious interference with custodial rights. Currently, the Illinois legislature has not codified a civil remedy for child abduction or aiding and abetting child abduction, although both are codified as felonies with criminal penalties. See 720 ILCS 5/10-5 (West 2022) (child abduction); *id.* § 10-7 (aiding or abetting child abduction). Public policy supports the rejection of a *per se* rule that a parent can never sustain a cause of action for direct interference with the parent-child relationship. The continued adoption of such a rule essentially absolves those who aid and abet child abductions, which is clearly a wrongful act and harmful to the parents and children. To hold otherwise is to allow defendants' actions to be without consequence. This is especially true in a particularly egregious circumstance such as this, where defendants, armed with the knowledge that Jeremy

18

only had supervised visitation to specifically prevent abduction, went to great lengths to knowingly assist and finance the children's abduction.

¶ 40 Refusal to recognize tortious interference with custodial rights would also frustrate the fundamental right that a parent has to the continued enjoyment of his or her child, which is at the heart of the Hague Convention, the ICARA, and our criminal statutes that address child abduction. Contrary to defendants' assertions, Viera (or any parent in such situation) does not have any other remedy available because individual parties do not determine what cases the state's attorney prosecutes. As such, it is disingenuous to argue that the penalties contained in the criminal kidnapping statute would provide relief to Viera under these circumstances.

¶ 41 With respect to Viera's conspiracy claim, I would find that Illinois recognizes civil conspiracy as a distinct cause of action. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 19. Civil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose or a lawful purpose by unlawful means. *Id.*; *McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102, 133 (1999). " 'The function of a [civil] conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts.' " *Lewis*, 2020 IL 124107, ¶ 19 (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994)).

¶ 42 To state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *Id.* ¶ 20. Civil conspiracy requires proof that a defendant knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner. *Id.* Further, once the conspiracy is formed, all of its members are liable for injuries caused by any unlawful acts performed pursuant to and in furtherance of the conspiracy. *Id.* To prevail on a theory of civil conspiracy, a plaintiff must plead and prove (1) the

existence of an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful matter, (3) that an overt act was performed by one of the parties pursuant to and in furtherance of a common scheme, and (4) an injury caused by the unlawful overt act. *Id.*

¶ 43    I would find that the allegations in Viera's complaint support a cause of action for civil conspiracy to intentionally inflict emotional distress by defendants. A liberal reading of Viera's verified complaint and taking all facts as true for purposes of consideration of a section 2-615 motion reveals the following. Maya and Oren conspired with Jeremy to remove the children from Slovakia to the United States without Viera's knowledge and to conceal their whereabouts when they knew that Jeremy was not to remove the children from Slovakia per the parties' divorce. The act of removing the children in violation of the divorce decree was an unlawful child abduction. Maya provided Jeremy and the children with a private flight from Slovakia to London, and once they eventually reached the United States, Maya provided them with housing accommodations and living expenses and refused to disclose the children's whereabouts to Viera. Similarly, Oren also provided housing accommodations for Jeremy and the children and refused to disclose the children's whereabouts to Viera. Viera subsequently sustained injuries as a result of defendants' actions in the form of emotional distress as well as economic losses from her costs associated with the location and return of the children, including filing suit against Jeremy under the Hague Convention. Viera's economic losses from Maya and Oren are separate and viable even though she was awarded an amount under her fee petition in the Hague Convention action against Jeremy under the collateral source doctrine; that award does not negate or erase her separate damages for civil conspiracy in state court. Moreover, as previously noted, Viera did not receive the full amount of fees, expenses, and costs sought in her fee petition against Jeremy. Accordingly, as Viera's

complaint properly alleged a cause of action for civil conspiracy, it should not have been dismissed, and I would reverse the dismissal.

¶ 44     I would also find that Viera's award in the federal Hague Convention case does not preclude her recovery against defendants under application of our collateral source rule, especially in this instance where she did not receive the full amount of her requested attorney fees and costs. Illinois recognizes the "collateral source rule," which states that benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. *Id.* ¶ 46; *Wills v. Foster*, 229 Ill. 2d 393, 399 (2008). The justification for the rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons. *Lewis*, 2020 IL 124107, ¶ 46.

¶ 45     In conclusion, I would have reversed the dismissal of Viera's complaint and allowed the case to proceed.

***Hulsh v. Hulsh*, 2024 IL App (1st) 221521**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-00831; the Hon. Patrick J. Sherlock, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas Kanyock and Michael A. Beci, of Schwartz & Kanyock, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Peter Ordower, of Law Office of Peter Ordower, P.C., of Chicago, for appellee Maya Hulsh. |
| | Stephen J. Cullen (*pro hac vice*) and Kelly A. Powers (*pro hac vice*), of Miles & Stockbridge P.C., of Washington, D.C., for other appellee. |